STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
PETER DIXON, DEFENDANT-APPELLANT.

Argued March 19, 1963—Decided May 20, 1963.

Mr. *Charles H. Nugent* argued the cause for defendant-appellant.

Mr. *Norman Heine,* Prosecutor of Camden County, argued the cause for plaintiff-respondent (*Mr. James G. Aiken,* Assistant Prosecutor of Camden County, on the brief).

Mr. *Arthur W. Brinkmann* argued the cause for the State of New Jersey as *amicus curiae* (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

FRANCIS, J.  Defendant was convicted in the county court, November 13, 1960, on an indictment which charged that he did manufacture, process, distill and possess illicit alcoholic beverages in violation of *R. S.* 33:1–50(e).  The offense is a misdemeanor cognizable in the county court and not in the municipal court.  The Appellate Division affirmed, and after some intermediate proceedings, we granted certification on defendant's petition.  38 *N. J.* 363 (1962).

A number of grounds for reversal have been presented to us.  It is necessary to consider only one of them, namely, that defendant's conviction constituted double jeopardy.  We conclude that the judgment must be set aside on that ground.

Defendant Dixon operated a luncheonette in Camden, New Jersey.  On September 13, 1958 the premises were raided by an Alcoholic Beverage Commission inspector and city detectives.  Dixon and eight other persons were present at the time, allegedly engaged in a birthday party.  He went immediately to a rear room and began to pour the contents of an unlabeled pint jar down the sink.  A detective seized the jar, which then contained approximately five ounces of alcohol.  It had no tax stamps on it.  That quantity turned out to be the only tax-unpaid alcohol on the premises.  Other bottles of whisky and cans of beer were confiscated.  They were all tax-paid.

The following day a complaint was filed in the Camden Municipal Court accusing Dixon of illegal possession of untaxed alcoholic beverages contrary to *R. S.* 33:1–50(e).  A plea of not guilty was entered.

As has been indicated, the offense specified is not within the subject matter jurisdiction of that court.  It appears, however, that the magistrate, conscious of the small amount of alcohol involved, communicated with an assistant prosecutor, explained the situation and obtained permission to dispose of the matter in his court by downgrading the charge to a disorderly persons offense.  There is no doubt the telephone call was made and, as it was put at oral argument by the State, that consent was "probably" given to the magistrate to

dispose of the matter, rather than holding it for Grand Jury action. There is some question whether the conversation included specific reference to treating the complaint as a disorderly persons offense. In any event, we are thoroughly satisfied that everyone involved acted in good faith and contemplated disposition in the municipal court.

The magistrate testified at the hearing on the double jeopardy plea, that on September 26, 1958, in the presence of the city prosecutor and the interested police officers, he permitted the complaint to be downgraded to violation of *N. J. S.* 2A:170–1. This statute provides in part:

"Any person who is apprehended and proven to the satisfaction of the magistrate before whom he is brought to be a person who is engaged in an illegal occupation or who bears a bad reputation, and consorts for an unlawful purpose with thieves, burglars, pickpockets, swindlers, confidence men or other criminals or persons who bear a bad reputation, is a disorderly person. In any prosecution under this section the fact that the person apprehended is engaged in an illegal occupation or bears a bad reputation and is found consorting with thieves, burglars, pickpockets, swindlers, confidence men or other criminals or persons who bear a bad reputation, is *prima facie* evidence that such consorting was for an unlawful purpose."

The magistrate could not remember whether he had instructed the clerk of his court to amend the original complaint in formal fashion. Such an amendment was not noted on the docket or complaint, although the clerk testified that he had been directed to do so. Dixon entered a plea of not guilty to the new charge and the trial thereon proceeded.

No stenographic record was made of the proceeding. But evidence was received with respect to the illegal alcohol and its possession by Dixon, and as to the bad reputation of some of the persons who were on the premises at the time of the raid. At the conclusion of the trial, the magistrate found defendant guilty of violating *N. J. S.* 2A:170–1 for engaging in an illicit business (established, in his opinion, under the circumstances by possession of the illicit alcohol) and consorting with individuals of bad reputation. Sentence of a

fine of $50 and costs or 30 days in jail was imposed. Dixon took no appeal; he paid the fine. About six months later, the sample of illicit alcohol was destroyed on order of the Alcoholic Beverage Commission.

Subsequently, on May 21, 1959, the Camden County Grand Jury indicted Dixon for possession of illegal alcohol on September 13, 1958 in violation of *R. S.* 33:1–50(e). This was the same alcohol which had been used in the municipal court as support for the finding that he was engaged in an illegal occupation. A plea of double jeopardy was entered and denied by the county court. Trial of the indictment then proceeded and a conviction resulted, followed by a sentence of two to three years in State Prison and a fine of $1,000. The conviction was based entirely on proof of possession of the illicit alcohol already described. An appeal was taken and the Appellate Division remanded the matter for the taking of all relevant testimony on the issue of double jeopardy. That course was followed and the trial court again rejected the defense. Appeal to the Appellate Division was renewed, where the decision was affirmed.

In affirming the county court, the Appellate Division referred to certain incidental inconsistencies appearing in the municipal magistrate's affidavits and testimony as to what had happened in his court. They were thought to reflect an inaccurate recollection. Such discrepancies do exist but on the whole record we do not regard them as of sufficient substance to overcome his sworn testimony that he downgraded the original charge of violation of *R. S.* 33:1–50(e), and actually tried defendant for transgressing *N. J. S.* 2A:170–1.

Our conclusion that Dixon was tried and convicted for violation of *N. J. S.* 2A:170–1 brings to the fore the precise legal question to be determined: Does that conviction bar further indictment, trial and conviction under *R. S.* 33:1–50 (e)? It has long been the rule in this State that when one offense is an ingredient or integral part of another offense, or when the evidence necessary to secure a conviction of the second offense was an essential part of the proof used to obtain a

conviction of the first offense, conviction on one charge bars prosecution for the other. *State v. Williams,* 30 *N. J.* 105, 114 (1959); *State v. Mark,* 23 *N. J.* 162 (1957); *State v. Labato,* 7 *N. J.* 137 (1951).

The expression commonly used in speaking of double jeopardy is that no person may be convicted and punished twice for the same offense. "Same offense" in this context is not limited to the same offense as an entity and designated as such by a particular name. It comprehends also any integral part of such offense which may subject the offender to prosecution and punishment. *State v. Williams, supra.*

*State v. Mark* is peculiarly analogous in the present instance. Mark was arrested by municipal police who found pornographic material in his automobile. A complaint was filed in the municipal court charging him with violation of *N. J. S.* 2A:170–1 in failing to give a good account of himself, in engaging in an illegal occupation, and being in the borough "for an unlawful purpose, thereby becoming a disorderly person." The charge was based upon possession of the pornographic material. Mark pleaded guilty and was fined and put on probation. Three weeks later the Grand Jury indicted him for possessing the same obscene materials "with 'intent to utter and expose the same to the view of another * * * contrary to the provisions of *N. J. S.* 2A:115–2 * * *.'" In sustaining a plea of double jeopardy, this court said:

"In the case *sub judice* the two charges against the defendant are identical in fact and law. The same offense was cited against him in each 'complaint' and the trial judge below was amply justified in concluding the charge in the indictment in the County Court was one and the same as the charge lodged against the defendant in the municipal court.

There is no merit to the State's theory that the defendant's 'conviction was not that of possessing indecent and obscene material.' The record speaks to the contrary. The 'identity of the evidence' formula is applicable and the defendant must prevail." 23 *N. J.,* at *pp.* 169–170.

Basically, the reason for recognizing an *autrefois convict* situation was that the prosecution relied in the municipal court on proof of *possession* of the pornographic material to prove engagement in an illegal occupation contrary to *N. J. S.* 2A:170–1, and on the same possession to justify indictment for possessing such material with intent to utter and expose the same to the view of another, contrary to *N. J. S.* 2A:115–2.

The factual heart of the present case is very much the same as in *State v. Mark*. Possession of the alcohol in the jar bearing no tax stamps, *i. e.,* illicit alcohol, was used as an essential link in the proof of defendant's engagement in an illegal occupation in violation of the Disorderly Persons Act. (We express no opinion whether on the facts of the case, the proof of possession of illegal alcohol was sufficient to warrant an inference of engagement in an illegal occupation.) Possession of the same alcohol provided the proof to establish the charge in the indictment, *i. e.,* possession of alcoholic beverages contrary to *R. S.* 33:1–50(e).

The State accepts the thesis of the cited cases but argues against its relevancy for two reasons. First, it contended Dixon was tried in the municipal court for transgressing *R. S.* 33:1–50(e), as recited in the complaint. And, since such offense is not within the jurisdiction of that court, the judgment of conviction is a nullity and does not bar further prosecution in the proper tribunal, the county court. We are satisfied from the proof, however, that the magistrate ordered the complaint amended to substitute the alleged violation of *N. J. S.* 2A:170–1, and that the trial was focused on the new charge. Inadvertent failure of the clerk to note the amendment is not sufficient to warrant a different conclusion.

Secondly, the State suggests that, viewed in the most favorable light to defendant, the probable tenor of conversation of the municipal court judge with the assistant prosecutor was simply a grant of permission to try the case, as specified in the complaint, without realization that the local court had no jurisdiction. Pointing out that such permission could not

confer jurisdiction, regardless of the good faith of the parties, the State urges the trial and conviction were therefore of no legal consequence. But here again, the circumstances attending the entire transaction lead irresistably to a contrary view of the conversation. The magistrate was aware he lacked jurisdiction to hear the charge laid in the complaint. Such awareness motivated his call to the assistant prosecutor. Obviously, he knew that to retain jurisdiction and to dispose of the matter, permission to downgrade the offense had to be obtained from the prosecutor or his representative. And we are convinced that consent of such nature was the subject of the discussion. Whether there was an understanding meeting of the minds is, perhaps, not as clear as it might be, but there can be no doubt of the honest motives of the participants, or of the magistrate's belief that he had been authorized to downgrade the accusation to one within the jurisdictional competence of his court. He pursued that course and defendant's trial and conviction ensued, for violating *N. J. S.* 2A:170–1. Since, as we have said, the basic element of proof to sustain that charge was the same as required to establish the higher offense in the county court, justice requires recognition of the defense of double jeopardy.

The judgment is reversed and the cause is remanded for dismissal of the indictment.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.