97 N.J. Super. 396 (1967)
235 A.2d 214
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE BAILEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1967.
Decided October 31, 1967.
*398 Before Judges KILKENNY, CARTON and MATTHEWS.
Mr. Frank A. Pelliccia argued the cause for appellant.
Mr. Thomas L. Yaccarino, Assistant County Prosecutor, argued the cause for respondent (Mr. Vincent P. Keuper, Monmouth County Prosecutor, attorney).
The opinion of the court was delivered by CARTON, J.A.D.
Defendant appeals from an order denying his petition for post-conviction relief. He was tried and convicted on May 5, 1964 of violating N.J.S.A. 24:18-4 (possession of a narcotic drug).
The circumstances giving rise to this charge were as follows: On February 8, 1964 defendant was standing in front of a poolroom in Asbury Park about 9:30 P.M. According to Detective Burke of the Asbury Park Police, he and Detective Davis were on patrol in a police car. Burke testified that when he was about six feet from defendant *399 he saw the latter put his hand in his pocket and drop a package to the ground. While Bailey, on request of one of the police officers, was proceeding to the police car, Burke picked up the package and examined its contents. Within the package were seven cellophane bags, two hypodermic needles, a "burnt bottle cap" and "two converted eye droppers." Upon finding these articles Burke arrested defendant, who denied any knowledge of this package.
Detective Davis testified also that defendant attempted to flee on his arrival at headquarters and was later recaptured. According to Officer Annunziata, defendant also threw a cellophane package into the trash basket in the men's room at police headquarters, which Annunziata recovered from the basket. Chemical analysis disclosed that the bags, needles and eye droppers contained a morphine alkaloid; the bottle cap contained heroin.
During the course of the trial counsel for defendant objected to the admission into evidence of the narcotic paraphernalia and the findings of the chemist on the ground that they were the products of an unlawful search and seizure. This objection was overruled, as well as a motion for dismissal at the close of the State's case made on the same ground.
Defendant testified that Detective Burke got out of the car and said "Bailey come here"; that he was told to get in the car; he then got in the car, and Burke got out of the car and walked a few feet and picked up a package. Bailey denied that the package was his. He also contradicted Annunziata's testimony that he had thrown away the cellophane package at headquarters. Reverend Copeland, with whom Bailey was in conversation at the time, testified that defendant complied with the police officer's request to come to the car; that Detective Burke got out of the car, opened the door for Bailey to get in the back seat, and then picked something up where Bailey and Copeland had been standing about ten feet away. He denied that he had seen Bailey drop anything during their conversation.
*400 Previous to the conviction in the County Court defendant had been found guilty in the municipal court of unlawful possession of narcotic paraphernalia (N.J.S. 2A:170-77.5) and being under the influence of a narcotic drug (N.J.S. 2A:170-77.8).
After sentence defendant petitioned for post-conviction relief on the grounds that (1) he was not provided with effective counsel at trial; (2) the defense of double jeopardy should have been raised by his attorney, and (3) the sentencing was improper. The county judge found that defendant had had the benefit of effective counsel and held that he had not been placed in double jeopardy, reserving decision on the question as to improper sentencing. On this appeal defendant has abandoned the contention that he was denied effective counsel, but challenges the determination concerning the question of double jeopardy and the validity of the sentence. He also raises other issues.
Defendant claims that his arrest was illegal because it was based on the results of an illegal search which preceded it. The contention is that the right to arrest must precede the search, but that in this case just the opposite occurred. Since there was no warrant for defendant's arrest and no claim by the State that the police officers had probable cause to believe he was committing or had committed a crime, defendant argues the arrest was illegal and the fruits of that arrest tainted.
The validity of the argument so advanced depends upon whether there was, in fact, an illegal search or seizure. The State's position is that, under the circumstances under which the police obtained and examined the packet, there was no illegal search and the seizure was lawful for the reason that the evidence obtained was abandoned property. We agree.
Abandonment is "the voluntary relinquishment of all right, title, claim and possession, with the intention of not reclaiming it." Black's Law Dictionary (4th ed. 1957), p. 13. Abandonment depends upon concurrence of the intention to abandon manifested by some overt act or failure *401 to act which carries the implication that the owner neither claims nor retains any interest. That the packet was abandoned is amply supported by defendant's denial of ownership at the time it was retrieved by the police officers and his repeated denial of ownership or knowledge of the package in his testimony at the trial.
In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1959), where a search was made of a wastepaper basket in a hotel room defendant had recently vacated, the Supreme Court held that items found in the basket were properly admitted into evidence at his trial. The court said:
"So far as the record shows, petitioner had abandoned these articles. He had thrown them away. So far as he was concerned they were bona vacantia. There can be nothing unlawful in the Government's appropriation of such abandoned property." 362 U.S., at p. 241, 80 S.Ct., at p. 698 (4 L.Ed.2d, at p. 687)
Similarly, it was held in Elledge v. United States, 359 F.2d 404 (9 Cir. 1966), that the mere disclaimer, "I don't know. It's not mine," was analogous to abandonment and hence the property seized could constitute sufficient probable cause to arrest the defendant without a warrant.
Here defendant, by his words and conduct, denied an interest in the packet. It would be incongruous under such circumstances to hold that his fundamental right to be immune from an unlawful search or seizure was infringed. As our Supreme Court commented in State v. Mark, 46 N.J. 262, 270 (1960), "Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him."
The next point raised by defendant is that he was placed in double jeopardy by his trial and conviction of possession of a narcotic drug in the County Court after having been previously tried and convicted in the municipal court on charges of being under the influence of narcotic drugs and *402 unlawful possession of narcotic paraphernalia under the Disorderly Persons Act.
We observe that defendant failed to make timely motion raising this defense of double jeopardy pursuant to R.R. 3:5-5(b)(2). Failure to do so may properly be deemed a waiver of this defense. However, we prefer to dispose of this issue on the merits. See State v. Currie, 41 N.J. 531 (1964).
In State v. Reed, 34 N.J. 554 (1961), Justice Proctor said:
"Since the Drug and Use statutes define two distinct offenses, the fact that an accused who possessed and also used or was under the influence of a narcotic could be prosecuted for either offense or both does not alone affect the constitutional validity of the Drug or the Use statute. In such a situation, the decision to proceed under either or both of the statutes is traditionally the State's. [Citing cases] * * *" (at pp. 572-573)
In support of its position the State cites State v. Harris, 63 N.J. Super. 184 (App. Div. 1960). There defendant's claim of double jeopardy at the trial and on appeal for a violation of R.S. 24:18-24 based on the same facts and growing out of the same circumstances as his previous trial and acquittal for a violation of N.J.S.A. 28:170-8 was rejected. The court said (at p. 186): "The crime of being a narcotics user is not a component part of the crimes of possessing and dispensing narcotics." See also State v. Puckett, 67 N.J. Super. 365 (App. Div. 1961), affirmed 34 N.J. 574 (1961).
Defendant avers, nevertheless, that he was placed in double jeopardy because the offenses involved in the municipal court action and the later County Court conviction were ingredients or integral parts of the same transaction, and because the evidence in the later action would have been sufficient to convict him in the earlier proceeding. He asserts that the facts of this case fall squarely within these two recognized tests for determining whether a defendant has *403 been placed in double jeopardy. Specifically, defendant argues he was convicted in the municipal court of possession of paraphernalia, i.e., the bottle top "cooker," but that the only traces of heroin were found in the bottle cap "cooker." The "cooker," defendant claims, was a part of the evidence in the County Court trial used to convict him on the charge of possession of narcotics.
Defendant relies upon State v. Labato, 7 N.J. 137 (1951), and State v. Dixon, 40 N.J. 180 (1963). In Labato defendant was convicted in the municipal court on a charge of possession of lottery slips. Later he was convicted in the County Court on an indictment charging that he "unlawfully and knowingly did have in his possession certain papers * * *." Our Supreme Court held that the possession in the first charge necessarily included an intentional control and dominion, thereby satisfying the often-quoted rule in defining double jeopardy  "whether the evidence necessary to sustain the second indictment would have been sufficient to secure legal conviction on the first."
In Dixon, the court also sustained a plea of double jeopardy in a County Court action charging possession of illegal alcohol in violation of the Alcoholic Beverages Act where the defendant had earlier been convicted in the municipal court on a charge of engaging in an illegal business in violation of the Disorderly Persons Act. The court stated that, when one offense is an ingredient or integral part of another offense, or when the evidence necessary to secure a conviction of a second offense was an essential part of the proof used to obtain a conviction on the first offense, conviction on one charge bars prosecution for the other.
The present case is distinguishable from those cited by defendant. Here defendant was convicted in the municipal court for being under the influence of narcotic drugs (N.J.S. 2A:170-8) and for control or possession of paraphernalia (N.J.S. 2A:170-77.5). His conviction thereafter in the County Court was for possession of narcotic drugs (N.J.S.A. 24:18-4). It is readily apparent that *404 the constituent elements of these crimes are different and require different proof.
Nor can it fairly be said that the "cooker" was evidence necessary to secure the conviction in the County Court on the indictment charging possession of narcotics. It was the possession of the heroin which was the subject of the indictment and conviction in the County Court, not the "cooker." The introduction of the bottle cap "cooker" into evidence in that action were merely incidental to the proof of the possession of the heroin contained in this paraphernalia. In this connection, it may be noted that the paraphernalia which was the subject of the charge in the municipal court appears to have been the "needles" and not the bottle cap.
Further, as our Supreme Court recently stated in State v. Currie, supra:
"Neither the same transaction test nor the same evidence test is absolute or inflexible. [Citations omitted.] In Roller, this Court recently pointed out that neither test has proved to be entirely acceptable, while seeking the elusive ideal test the court has in each individual case conscientiously tried to safeguard the State's vital interest in bringing the guilty to justice while at the same time protecting the accused from multiple trial and punishment." (41 N.J., at p. 538)
Under all the circumstances, we discern no denial of defendant's right to be protected from such multiple trial and punishment.
Defendant next urges that he was improperly sentenced under N.J.S.A. 24:18-47. That statute, in pertinent part, provides:
"Any person as in this chapter defined (a) Who, being of or over the age of 21 years, sells, gives, administers or dispenses any narcotic drug, except as authorized by this chapter, to any person under the age of 18 years, shall be guilty of a high misdemeanor and shall be punished by a fine of not less than $2,000.00 or more than $10,000.00 and by imprisonment at hard labor for not less than 2 years with a maximum imprisonment for life or (b) Who violates any other provision hereof shall be guilty of a high misdemeanor *405 and shall be punished as follows: (1) for a first offense, by a fine not exceeding $2,000.00 and by imprisonment, with hard labor, for a term of not less than 2 years nor more than 15 years * * *."
Defendant's claim is that he was improperly sentenced because the trial judge erroneously believed defendant was 21 years of age at the time of the offense and that consequently he was required by the statute to impose a minimum fine of $2,000. The State does not dispute that defendant was under 21 years of age, but urges that he was nevertheless not improperly sentenced under R.S. 24:18-47(b)(1) because that statute properly construed does not make a defendant's being an adult a prerequisite to the imposition of the mandatory fine.
Defendant was sentenced to the reformatory, minimum of two years, credit for 102 days in jail. The trial judge was then referred to the portion of the statute which required, in addition, the imposition of a fine not exceeding $2,000.
"Mr. Niemtzow: Is the fine mandatory?
The Court: Yes, the penalty in the statute for each first offense is a fine not exceeding $2,000 and by imprisonment with hard labor for a term of not less than two years nor more than fifteen years.
That being the case, the Court feels that it is mandated; and an [sic] addition to the sentence to the New Jersey Reformatory, there will be the imposition of a fine in the amount of $2,000. That is the minimum. I can't do any better."
It is evident that the quoted comment is ambiguous and may be susceptible to the interpretation placed upon it by defendant. But it is also at least arguable that in the context in which the comments were made, the sentencing judge, after having examined the language of the statute, was merely expressing the opinion that he did not feel he could be more lenient under the circumstances.
However, we find it unnecessary to resolve this issue. Defendant has advised the court that he was paroled on January 11, 1967 and that an order was signed the same *406 day remitting $1,950 of the total fine. Since all but a small part of the fine has been remitted, we do not deem defendant to be aggrieved at this posture of the case by the action of the court in imposing the $2,000 fine so as to require a determination as to its legal propriety.
The final point urged is that the trial judge committed error in his charge with respect to defendant's sudden flight after his arrest.
Defendant's unexplained flight was an appropriate and relevant matter at the trial and properly the subject of comment by the trial judge. See State v. Petrolia, 45 N.J. Super. 230 (App. Div. 1957), certiorari denied 355 U.S. 942, 78 S.Ct. 431, 2 L.Ed.2d 422 (1958); State v. D'Amato, 26 N.J. Super. 185 (App. Div. 1953).
Viewed in the context of the charge as a whole, the trial judge's use of the word "presumption," although imprecise, merely informed the jurors that they could draw an inference of guilt from defendant's action. We are of the opinion that defendant was not prejudiced.
Affirmed.