179 N.J. Super. 1 (1981)
430 A.2d 233
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GREGORY FARINICH, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES VOREL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1981.
Decided March 31, 1981.
*3 Before Judges SEIDMAN, ANTELL and LANE.
Gerald P. Boswell argued the cause for appellant Gregory Farinich (Stanley C. Van Ness, Public Defender, attorney; Lawrence Bitterman, Assistant Deputy Public Defender, of counsel and on the brief).
Thomas J. Cammarata argued the cause for appellant James Vorel (Shaljian, Cammarata & O'Connor, attorneys).
Leslie Sinemus, Assistant Essex County Prosecutor, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Donald S. Coburn, Essex County Prosecutor, of counsel; Marjorie M. Zalk, Assistant Prosecutor, on the letter brief).
PER CURIAM.
The subject matter of this appeal is the denial of defendants' motion to suppress evidence. Both were indicted for possession *4 of marijuana and possession of the same with intent to distribute. Following the denial of the suppression motion, both defendants retracted their not guilty pleas and entered pleas of guilty to possession with intent to distribute. As the State acknowledges, the crucial issue is whether the property appropriated by the police was voluntarily abandoned by defendants so that they had no standing to complain of the search and seizure of the property.
During the evening of January 5, 1978 the Newark police department relayed to Port Authority police headquarters at Newark Airport a telephoned message received from the sheriff's office in Broward County, Florida, concerning a suitcase aboard a plane due to arrive at Newark from Fort Lauderdale shortly after midnight. The Port Authority police called the sheriff and were informed that a suitcase which had broken open at the Fort Lauderdale loading ramp contained green plastic bags filled with suspected marijuana. The suitcase was described and a baggage claim number given. Five officers of the Port Authority police were dispatched to the Delta terminal building. Two positioned themselves at the airplane when it arrived and identified the bag as it was unloaded and placed upon the conveyor belt leading to the baggage carousel inside the building, where the other officers were waiting. Defendant Farinich was observed claiming the suitcase and leaving the baggage area with another man, later identified as defendant Vorel, who was carrying two suitcases. The officers, in uniform, followed and accosted them, taking them by the arm, and said that they wished to question them about the suitcases. As the police were leading defendants to the side of the area, Farinich struck the arm of one officer, dropped his suitcase, and fled. Vorel also dropped his suitcases and ran in the opposite direction. They were separately pursued and apprehended some distance away, handcuffed, and taken to the Delta baggage office.
It is unclear whether the suitcases were opened by the police in the baggage office before or after defendants were brought *5 in. According to the only police officer who testified at the suppression hearing, the suitcases, none of which was locked, were opened at about the time defendants arrived. But Vorel (Farinich did not testify) insisted that when they reached the baggage room the suitcases were already open. All contained bags of green vegetation that appeared to be marijuana.
The trial judge found that the suitcases had been abandoned and, consequently, there was no search and seizure in violation of defendants' Fourth Amendment rights. We agree with the conclusion reached.
Preliminarily, we address the threshold issue of whether the police were justified in stopping defendants in order to question them about the suitcases. Defendants contend that there was no probable cause for the police to do so because the information on the basis of which they acted was essentially hearsay. The information in the possession of the police amply supported a reasonable belief on the part of the police that defendants possessed contraband. Probable cause must be judged on the basis of the composite information in the hands of the police, including hearsay. A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause for arrest. Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906-907; State v. Sheffield, 62 N.J. 441, 447 (1973). Defendants' flight is significant. It has been held that while police may have the right to make an inquiry, in the absence of information that a crime has occurred a suspect's failure to stop or his flight would be an insufficient basis for seizure or detention, but even in such case evidence seized will not be suppressed if the suspect abandoned it. Cf. People v. Howard, 50 N.Y.2d 583, 430 N.Y.S.2d 578, 408 N.E.2d 908 (Ct.App. 1980), cert. den. ___ U.S. ___, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980).
Abandonment is "`the voluntary relinquishment of all right, title, claim and possession, with the intention of not *6 reclaiming it.' Black's Law Dictionary (4th Ed. 1957), p. 13." State v. Bailey, 97 N.J. Super. 396, 400 (App.Div. 1967). In the context of the Fourth Amendment a defendant "abandons" property when he voluntarily discards, leaves behind or otherwise relinquishes his interest in the property in question so that he can no longer retain a reasonable expectation of privacy with regard to it at the time of the search. United States v. Colbert, 474 F.2d 174, 176 (5 Cir.1973). The issue of whether property has been abandoned is factual in nature. United States v. Jackson, 544 F.2d 407, 409 (9 Cir.1976). In Jackson the defendant, while walking through an airport carrying a suitcase containing heroin, was approached by two law enforcement officers who identified themselves and said they wanted to talk to him. On hearing this, he dropped the bag and began to move away, but was stopped after taking three steps. The bag was seized. The Court of Appeals rejected the District Court's finding of abandonment, stating, "[w]e are not persuaded that the simple acts alone of putting a suitcase down and walking on a few steps indicated an intent to abandon the suitcase." Id. at 410. But in United States v. Colbert, supra, defendants were stopped by police officers who noticed that one fitted the description of a suspected felon. Defendants identified themselves as book salesmen, in part so as to explain briefcases they were carrying that contained sawed-off shotguns. When the officers asked to look inside the briefcases, defendants put them down on the sidewalk and walked away. The Court of Appeals, en banc, held that the subsequent search of the suitcase was constitutional, specifically ruling that the cases had been abandoned. Id. at 177. As to any question of the voluntariness of the abandonment, the court stated that "[t]he police officers in no way compelled these actions." Ibid.
In the case under review the trial judge found an abandonment of the suitcases. His finding must be deferred to on appellate review if the finding could reasonably have been reached on sufficient credible evidence present in the record. State v. Johnson, 42 N.J. 146, 162 (1964). The undisputed proofs *7 here are that defendants dropped the suitcases and fled. We are not persuaded by defendants' argument that their failure to deny ownership of the suitcases is contraindicative of abandonment. Nor do we believe that there discarding of the suitcases was simply to expedite their escape, rather than to abandon the property. It would, in our view, be unreasonable to infer anything other than that defendants intended to place as much distance between themselves and the suitcases as possible. For obvious reasons, it is a fair inference that defendants had no desire ever to reclaim their belongings. We are completely in accord with the trial judge's finding of a voluntary abandonment.
The order denying the motion to suppress is affirmed.
ANTELL, J.A.D. (dissenting).
This search could have been performed in a constitutional manner with only minor inconvenience to the police. Taking into consideration the telephoned information, together with defendants' flight and the fact that defendant Farinich committed a battery upon one of the police officers, grounds clearly existed for their arrest. State v. Carter, 54 N.J. 436, 446 (1969), cert. den. 397 U.S. 948, 90 S.Ct. 969, 25 L.Ed.2d 130 (1970). In fact, they were arrested within a minute or two of the attempted flight, placed under restraint, and there is nothing about what happened thereafter which excused the necessity of a warrant in order to search the suitcase. See State v. Patino, 83 N.J. 1, 7 (1980); State v. Welsh, 84 N.J. 346, 352 (1980). It is settled that personal baggage are areas of privacy protected by the Fourth Amendment. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).
The question presented is only whether, with the evidence in police custody secure from destruction, and the defendants under restraint, the police should first have sought a warrant before making the search.
*8 The majority rests its affirmance of the order denying suppression on the theory that by "abandoning" the suitcases defendants forfeited their rights under the Fourth Amendment. I respectfully disagree that defendants' conduct amounted to an abandonment so as to authorize a warrantless search of their baggage. An essential element of abandonment in this type of case is denial of ownership or possession by the defendants, and it is clear that such a disavowal was never made.
Fundamental to an abandonment is the principle that defendants' self-divestiture of the property must be voluntary. Where this occurs it is generally held that constitutional protections against unreasonable searches are inapplicable. It is reasoned that the defendant either has no standing to complain, or gave up his reasonable expectation of privacy in the abandoned property.
Cases in which the question was considered divide broadly into two categories. One is where defendant throws the property away for reasons unrelated to any apprehended criminal liability for possession thereof and his intent to part with possession is unmistakably shown. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), is such a case. There, certain items were taken by the police from a wastepaper basket in a hotel room earlier vacated by defendant after he had paid his bill and checked out. The articles had obviously been thrown away and the court sensibly concluded that defendant could no longer claim a right of privacy therein.
In the other class of cases the article is abandoned under the threat of imminent arrest for criminal possession thereof and the act of abandonment itself is integral to defendant's denial of possession. Extending somewhat the Abel principle, it is generally concluded that where the defendant throws the object away so as to deny that he ever had it, no retained right of privacy therein can rationally be recognized. Such cases are exemplified in this State by State v. Brown, 132 N.J. Super. 180 (App.Div. 1975), and State v. Bailey, 97 N.J. Super. 396 (App.Div. 1967).
*9 In Brown defendant dropped a tinfoil of cocaine and attempted to kick it under his car. He denied this, and denied possessing the cocaine. Under these circumstances we held that "no Fourth Amendment right would even be involved," 132 N.J. Super. at 184 citing Abel v. United States and State v. Bailey, both supra. In Bailey defendant dropped a package of narcotics paraphernalia he had taken from his pocket. When arrested, he denied dropping or having any knowledge of the package, and his claim of illegal search and seizure was rejected on the ground of abandonment. Noting that abandonment is "`the voluntary relinquishment of all right, title, claim and possession, with the intention of not reclaiming it,'" 97 N.J. Super. at 400 citing Black's Law Dictionary (4 ed. 1957), at 13, we explained that its existence "depends upon concurrence of the intention to abandon manifested by some overt act or failure to act which carries the implication that the owner neither claims nor retains any interest." Id. at 400-401. Applying this definition we concluded that the finding of abandonment was "amply supported by defendant's denial of ownership at the time it was retrieved by the police officers and his repeated denial of ownership or knowledge of the package in his testimony at the trial." Id. at 401. In light thereof we said that it "would be incongruous under such circumstances to hold that his fundamental right to be immune from an unlawful search or seizure was infringed." Id. at 401. United States v. Jackson, 544 F.2d 407 (9 Cir.1976), is more explicit. There, upon being approached by police officers, defendant "immediately dropped the suitcase, and continued walking away in a hurried manner." He was stopped after taking three steps. Id. at 409. Contrary to the finding of the District Court, the Circuit Court of Appeals held "that the simple acts alone of putting the suitcase down and walking on a few steps before being stopped" did not indicate an intent to abandon the suitcase. Id. at 410. However, after defendant was arrested and taken into custody he "denied dropping the suitcase, saying that it was not his and that he had never seen it before." Id. at 409. After the court determined *10 that the arrest was legal and his custodial statement therefore admissible, it held that it was this disavowal which validated the finding of abandonment and the ensuing warrantless search. Id. at 411. Without the denial of possession the warrantless search would not have been sustained.
It is suggested by the majority that United States v. Colbert, 474 F.2d 174 (5 Cir.1973), stands for a proposition in some way different than in Jackson. While the majority correctly states that the Colbert court found an abandonment, what is not stated is that its result turned on the fact that defendants had denied ownership and possession. This is what the court said:
The facts of this case show conclusively that Colbert and Reese abandoned their briefcases before the searches took place. In response to police questions they both disclaimed any interest in the briefcases and began to walk away from them. The police officers in no way compelled these actions. Under these circumstances appellants could entertain no reasonable expectation of privacy in them. Compare Lurie v. Oberhauser, [431 F.2d 330 (9th Cir. 1970)], where a disclaimer of any ownership or possessory interest in a suitcase in the course of a police investigation was held sufficient without more to support a finding of abandonment. The legal effect of the abandonment is, as noted above, to deprive appellants of standing to challenge the subsequent searches [at 177]
In People v. Howard, 50 N.Y.2d 583, 430 N.Y.S.2d 578, 408 N.E.2d 908 (Ct.App. 1980), while being chased by the police defendant threw a vanity case containing a firearm and heroin onto a pile of rubbish. Concluding that the proofs did not "`reasonably beget the exclusive inference of the throwing away,'" 430 N.Y.S.2d at 585, 408 N.E.2d at 914 the court held that no abandonment appeared. It noted that defendant held onto the box as long as he could, described the relinquishment of possession as "a spontaneous reaction to the necessity of evading his pursuers," and stated that "[u]nder these circumstances he cannot be said to have knowingly waived his constitutional protection against warrantless search of the case." Id. 430 N.Y.S.2d at 586, 408 N.E.2d at 915.
State v. Brown, 45 Ohio App.2d 76, 341 N.E.2d 325 (Ct.App. 1975), also demonstrates the vital role of defendants' denial of ownership or possession in ascertaining his intent to abandon.
*11 Two significant features of this case are that these defendants never affirmatively discarded the luggage and never denied possession thereof. To the contrary, the evidence demonstrates their continuing intent to exercise dominion and control thereover. When approached by the police they were carrying the bags and in response to a request therefor displayed their claim tickets.[1] Within a moment or two after their abortive escape they were brought back in handcuffs and one of the defendants even furnished the lock combination for one suitcase.
While the decision to run from the scene was, of course, voluntarily made, the decision to leave the suitcases behind clearly was not. Defendants could not carry the bags off with them because of the police presence. Had they tried, flight would have been impossible. The panicked conduct of the defendants does not as a matter of law, evidence anything beyond an intent to escape from custody. It is also clear that this course was pursued, not to separate themselves from the bags but, in spite of that consequence, not as a foundation for denying possession but because possession was undeniable.
I cannot subscribe to the forced rationale by which defendants' relationship to the suitcases is said to have become so transformed during their one- or two-minute absence that the police were thereby freed to search without the prior approval of an impartial judge. It seems an arbitrary conclusion which is conclusively contradicted by the realities of the occasion.
Recognizing that the abandonment situation, strictly speaking, is not a true "exception" to the rule requiring the issuance of a search warrant, but rather one to which the Fourth Amendment does not apply, State v. Brown, 132 N.J. Super. at 184, still it is appropriate to note that the exceptions were all born of intensely practical considerations. They encompass (1) searches incidental to a lawful arrest, (2) plain view observations, (3) *12 consent searches, (4) "stop and frisk" cases and (5) exigent circumstances. State v. De Lorenzo, 166 N.J. Super. 483, 487-88 (App.Div. 1979). Each is grounded in the realities of human behavior and the lessons of police experience. Yet they strike a balance between the legitimate requirements of law enforcement and the right of the individual to protection from unreasonable search and seizure. But no considerations of practicality or common experience are offered here to justify displacing the constitutional guaranty. The only support for doing so is found in the ex cathedra judgment that defendants abandoned the suitcases. That this is unrelated to any practical considerations of justice is nowhere better demonstrated than from the fact that the arresting officers themselves never claimed an abandonment or asserted that they acted in reliance on the belief that the property had indeed been abandoned. The fact is that at the time of the arrest they formed a determination to search the suitcase and were giving no thought to defendants' rights. As if this were not enough to raise serious doubts about the credibility of the State's position, it should also be noted that the abandonment issue was not even raised by the prosecutor. It was the trial judge who raised the question, requested briefs thereon and then entered judgment in accordance with his initial impression.
The majority opinion states that the question of defendants' intent to abandon is answered by the fact that "defendants had no desire ever to reclaim their belongings." This, however, is speculative and based only on the "obvious reasons" flowing from the fact, presumably, that marijuana was later found in the suitcase. But the marijuana was discovered as a result of the very search which is being challenged.
It has long been settled that "a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." U.S. v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1947); Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 1436, 4 L.Ed.2d 1688 (1960); Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. *13 168, 171, 4 L.Ed.2d 134 (1959); Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520 (1926). A search "is not made lawful because the desired evidence is obtained." State v. Doyle, 42 N.J. 334, 342 (1964). See, also, State v. Klein, 79 N.J. Super. 559, 564 (App.Div. 1963). The presence of marijuana, vital to a belief in defendants' intent to abandon, was not discovered prior to the search and therefore cannot be weighed in favor of validating an illegal search.
Finally, I would make the point that the State must bear the burden of proving the voluntariness of an abandonment. This would include proof that defendant knew he had a right to refuse the police permission to search the suitcase and that he had a legally protected right of privacy therein. Such proof is required in cases where the search is based upon a claim of consent given by the defendant. State v. Johnson, 68 N.J. 349, 354 (1975). Consent and abandonment are basically alike in that both involve a voluntary and intentional relinquishment of a known right. The legal effects of both are the same in that each operates to permit an otherwise unlawful search of one's belongings, and with both resulting searches are found to lie outside the protection of the Fourth Amendment. State v. King, 44 N.J. 346, 352 (1965); State v. Brown, 132 N.J. Super. at 184. There is a presumption, of course, against the waiver of constitutional rights, and for it to be effective "there must be clearly established that there was `an intentional relinquishment or abandonment of a known right or privilege.'" Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966), citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). It would appear, almost by definition, that the conduct of defendants in running from the scene unmistakably manifested their lack of knowledge that the police were not at liberty to search the bags.
By sanctioning the finding of abandonment based only on defendants' abortive flight a range of cases is opened wherein the State may seek validation of warrantless searches, under a wide variety of circumstances, on the claim that defendant *14 relinquished his right of privacy simply by separating himself in some ambiguous way from the property searched. By retaining the requirement that the physical separation be accompanied by a disavowal of ownership or possession the trial judge, who must grant or deny the right of privacy, is provided with some objective guidance as to when an abandonment may be found. Because the rejection of such a standard constitutes a broadening of the abandonment principle to an extent incompatible with the goals of the Fourth Amendment, I must dissent from the decision of the majority.
NOTES
[1] This was conceded by the arresting officer on cross-examination. Defendants' flight did not occur quite so abruptly as the majority opinion states.