**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1080-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GARY A. SMITH a/k/a
GARY SMITH, ANDRE SMITH,
GARY A. SMITH, JR. and
GARRETT SMITH,

    Defendant-Appellant.

_____

Submitted December 17, 2025 – Decided April 9, 2026

Before Judges Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 23-05-0315 and 23-05-0316.

Mazraani & Liguori, LLP, attorneys for appellant (Joseph M. Mazraani, of counsel; Jeffrey S. Farmer, of counsel and on the briefs).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gary A. Smith appeals from an order denying his suppression motion and judgment of conviction, which the trial court entered after he had pleaded guilty to first-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(j), and before the Supreme Court issued its opinion in State v. Cromedy, 261 N.J. 421 (2025). We affirm the denial of defendant's suppression motion and his conviction but vacate the sentence and remand for the trial court to consider Cromedy in resentencing defendant.

I.

In 2023, a grand jury returned an indictment charging defendant with two counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); two counts of second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); fourth-degree aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1(b)(4); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d); and fourth-degree possession of a large capacity magazine, N.J.S.A. 2C:39-3(j). A separate indictment charged defendant under N.J.S.A. 2C:39-5(j) with two counts of first-degree unlawful possession of a weapon by a person having a prior conviction of a crime subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

2

Defendant moved to suppress two handguns law-enforcement officers had recovered in a warrantless search. The court conducted an evidentiary hearing on September 15, 2023. The State called as witnesses Detectives James Addison and Marcello Lopez, who testified about the circumstances attendant to the search and seizure that yielded two handguns defendant sought to suppress. The State also introduced into evidence recordings from a City of Plainfield camera and body-worn cameras of the officers involved in defendant's arrest and the search. Defendant did not present any witnesses but introduced into evidence additional video footage and a Plainfield Police Department dispatch report.

The evidence presented during the hearing established that, on the evening of February 26, 2023, Detective Addison was monitoring a live feed from city surveillance cameras. At approximately 11:07 p.m., he observed defendant and another individual, Jacquan Terry, park and exit a vehicle. Defendant then approached another vehicle, engaged in a verbal altercation with its occupant, removed firearms from his jacket pocket, "and tapped them on the window." Detective Addison recognized defendant from prior investigations and was aware he had recently been released from incarceration for attempted murder and unlawful possession of weapons.

3

Detective Addison testified that, when law-enforcement officers responded to the scene minutes later, defendant ran into a nearby building. Detective Addison and other officers went into the building, proceeded up a flight of stairs, and reached a locked door to a two-bedroom apartment. A woman in the stairwell told them children were inside the apartment. Detective Addison testified he believed forced entry was necessary because "[defendant] was an individual known to [law enforcement] with a violent past," officers had "actually seen him with" two handguns moments earlier on the live surveillance feed, and "innocent civilians" and "little kids" were inside the apartment.

After announcing their presence, officers breached the door with a battering ram. Once inside, officers noticed several adults and children in the apartment and began searching for defendant and the handguns. They located defendant, secured him in handcuffs, and continued to search the apartment for the handguns. Meanwhile, Detective Lopez and other officers located Terry in a bedroom hiding under a bed and detained him. Detective Lopez conducted a "protective sweep . . . of the bedroom." He climbed out of one of the apartment's bedroom windows onto what he described as a "roof." Using a flashlight, he saw two handguns on the rooftop beneath the bedroom window. Officers seized the handguns.

4

A-1080-24

At the conclusion of the suppression hearing, the court asked the parties to submit briefs addressing, among other things, whether the rooftop on which the handguns were found constituted curtilage of the apartment under State v. Ingram, 474 N.J. Super. 522 (App. Div. 2023).  After receiving the parties' submissions, the court heard additional argument on the suppression motion on December 7, 2023.  In an email sent the day after argument, the court advised the parties "additional testimony will be necessary" and directed they "submit evidence for the court's consideration regarding the ownership of the property . . . where defendant was arrested and the adjacent property."  A December 13, 2023 order scheduled a hearing for January 5, 2024, and provided the parties were "free to submit evidence and offer testimony solely regarding the ownership of" the building in which the apartment where defendant was arrested was located, "the metes and bounds of same, and its physical characteristics specifically as it relate[d] to the roof of the subject premises and property adjacent thereto."

On leave granted, defendant appealed the order, contending the court had erred in "reopen[ing] the suppression hearing."  We affirmed the order.  State v. Smith, No. A-1246-23 (App. Div. June 6, 2024) (slip op. at 19, 27-28).

A-1080-24

The suppression hearing resumed on July 18, 2024. The State recalled Detective Lopez and introduced into evidence surveillance footage and the deeds for the buildings containing the apartment in which defendant was arrested and the adjacent roof where the handguns were recovered. Defense counsel submitted a July 18, 2024 letter to the court, challenging Detective Lopez's testimony and the State's evidence. The State responded in a July 26, 2024 letter, enclosing additional materials, including an engineering map, photographs, a supplemental report by the Union County Prosecutor's Office, and additional body-worn camera footage.

On August 2, 2024, the court entered an order and written decision denying defendant's suppression motion. The court found police had lawfully entered the apartment in "hot pursuit" and under exigent circumstances after observing defendant on live police surveillance tapping firearms on the window of another vehicle and then fleeing into a nearby building. The court further determined the rooftop where Detective Lopez had found the handguns did not fall within the curtilage of the apartment where defendant was arrested and that defendant had abandoned the handguns, losing any interest he may have had in them.

A-1080-24

Pursuant to a negotiated plea agreement, defendant pleaded guilty to first-degree unlawful possession of a firearm by a prior NERA offender, N.J.S.A. 2C:3-5(j).  In return, the State agreed to recommend dismissal of the remaining charges and a sentence of ten-years imprisonment with a five-year period of parole disqualification "pursuant to Graves Act," N.J.S.A. 2C:43-6(c).  On December 17, 2024, the court entered a judgment of conviction consistent with the plea agreement, sentencing defendant to ten years imprisonment with a five-year parole-disqualification period "pursuant to the Graves Act" to run consecutive to any term of imprisonment imposed for defendant's parole violation.

Defendant appeals from the order denying his suppression motion and the judgment of conviction.  He presents the following arguments for our consideration:

> POINT I
>
> THE COURT BELOW ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE SEIZED WITHOUT A SEARCH WARRANT AND THAT DECISION MUST BE REVERSED.  (Raised Below)
>
>> A.  IT WAS PATENTLY UNLAWFUL FOR THE OFFICERS TO SEARCH THE APARTMENT—INCLUDING EXPANDING THE SEARCH ONTO THE ROOF—ONCE

A-1080-24

DEFENDANT WAS TAKEN INTO CUSTODY AS THAT EXTINGUISHED WHATEVER EXIGENCY JUSTIFIED THE INITIAL ENTRY.

B. THE ROOF IS ENTITLED TO CONSTITUTIONAL PROTECTION AND THERE IS NO COMPETENT EVIDENCE IN THE RECORD THAT THE STRUCTURE UPON WHICH THE GUNS WERE FOUND WAS NOT THE SAME STRUCTURE AS THE APARTMENT WHERE DEFENDANT WAS FOUND NOR THAT HE HAD NO PERMISSION TO USE THE SAME.

C. THE OWNERSHIP OF THE ROOF IS IRRELEVANT TO THE ULTIMATE ISSUE OF SUPPRESSION.

POINT II

THE COURT ERRED IN IMPOSING A MANDATORY PERIOD OF PAROLE INELIGIBILITY SINCE N.J.S.A. 2C:39-5(j) IS A SUBSTANTIVE OFFENSE NOT LISTED IN THE GRAVES ACT, N.J.S.A. 2C:43-6(c) (not raised below).

II.

Our consideration of defendant's challenge to the denial of the suppression motion is guided by these familiar principles.

"We review the trial court's determination of [a] defendant's motion to suppress under a deferential standard." State v. Miranda, 253 N.J. 461, 474

8

(2023). On review of a grant or denial of a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Bryant, 483 N.J. Super. 13, 28 (App. Div. 2025) (quoting State v. Courtney, 478 N.J. Super. 81, 90 (App. Div. 2024)), leave to appeal filed, No. A-091575 (Jan. 7, 2026). We "defer to those factual findings because of the trial court's 'opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy.'" State v. K.H., 482 N.J. Super. 113, 128 (App. Div. 2025) (quoting State v. Elders, 192 N.J. 224, 243 (2007)) (internal quotation marks omitted). We reverse a suppression-motion order only when the trial court's factual findings "are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Gartrell, 256 N.J. 241, 250 (2024) (quoting Elders, 192 N.J. at 244). We review de novo "[a] trial court's legal conclusions . . . 'and the consequences that flow from established facts . . . .'" State v. Cohen, 254 N.J. 308, 319 (2023) (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)).

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against "unreasonable searches and seizures" and generally require a warrant issued on "probable

9

cause." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.  "[A] warrantless search is presumptively invalid" unless the State demonstrates the search falls into "one of the 'few specifically established and well-delineated exceptions' to the warrant requirement."  State v. Hemenway, 239 N.J. 111, 126 (2019) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)).

Defendant argues the warrantless search of the apartment, including the expansion of the search onto the adjacent rooftop, violated the Fourth Amendment because any exigency ended "once defendant was apprehended and removed" from the apartment.

"One recognized exception to the warrant requirement is the presence of exigent circumstances."  In the Int. of J.A., 233 N.J. 432, 448 (2018).  "To invoke that exception, the State must show that the officers had probable cause and faced an objective exigency."  Ibid.  "Police safety and the preservation of evidence remain the preeminent determinants of exigency."  State v. Dunlap, 185 N.J. 543, 551 (2006).  To justify a warrantless search based on the exigent-circumstances exception, "the State . . . must prove by a preponderance of the evidence that (1) the search was premised on probable cause and (2) law enforcement acted in an objectively reasonable manner to meet an exigency that

did not permit time to secure a warrant." State v. Caneiro, 262 N.J. 288, 301 (2025) (quoting State v. Manning, 240 N.J. 308, 333 (2020)).

The exigent-circumstances doctrine "demands a fact-sensitive analysis" "because 'the unique facts of each case determine whether the need to act without delay is imperative.'" Ibid. (quoting Manning, 240 N.J. at 333). In determining whether an exigency exists, the court may consider a "non-exhaustive list of factors," ibid., including:

> (1) the seriousness of the crime under investigation, (2) the urgency of the situation faced by the officers, (3) the time it would have taken to secure a warrant, (4) the threat that evidence would be destroyed or lost or people would be endangered unless immediate action was taken, (5) information that the suspect was armed and posed an imminent danger, and (6) the strength or weakness of the probable cause relating to the item to be searched or seized.
>
> [Id. at 301-02 (quoting Manning, 240 N.J. at 333-34).]

"The hot pursuit of a fleeing suspect may constitute an exigent circumstance . . . if the officers are in 'immediate or continuous pursuit' of the suspect." State v. Bookman, 251 N.J. 600, 613-14 (2022) (quoting State v. Bolte, 115 N.J. 579, 597-98 (1989)); see also State v. Mellody, 479 N.J. Super. 90, 120 (App. Div. 2024). "[T]he possible destruction of evidence and the threat

11

of violence by the suspect" also justify a warrantless entry. Bookman, 251 N.J. at 614 (quoting J.A., 233 N.J. at 449).

The trial court concluded the officers' warrantless entry into the apartment was justified under the hot-pursuit doctrine, reasoning officers had observed defendant on live video carrying firearms, arrived at the scene within minutes, and saw him flee into the building. Applying the factors enumerated in Caneiro and Manning, we conclude the record supports the trial court's finding of exigent circumstances, specifically under the hot-pursuit doctrine. See Caneiro, 262 N.J. at 301-02; Manning, 240 N.J. at 333-34.

First, the crime under investigation was serious. Officers observed defendant on live-stream surveillance cameras brandishing firearms during a street confrontation, conduct that suggested an immediate threat of violence.

Second and third, the situation confronting the officers was urgent. Officers arrived at the scene within minutes of observing the incident on the live feed and saw defendant flee into a residential building. They immediately pursued him into the building, placing them in "hot pursuit of a fleeing suspect." Under the circumstances, the officers did not have the opportunity to obtain a warrant and any delay would have been incompatible with the need to quickly locate the defendant and secure the handguns.

A-1080-24

Fourth, the circumstances created a substantial risk that innocent individuals could be endangered if officers did not act immediately. On entering the apartment, officers encountered several adults and children. Detective Lopez testified "[e]verbody was agitated and irate" and described the scene as "chaotic." Under those circumstances, the officers reasonably believed the firearms posed a danger to the apartment's occupants and potentially to the public absent immediate action.

Fifth, officers had specific information defendant was armed and posed an imminent danger. The live surveillance footage showed defendant carrying firearms, and officers knew from prior investigations that defendant had a history of violent conduct and was recently released on attempted murder charges involving weapons. Although officers found and detained him, the location of the handguns remained unknown until Detective Lopez found them on the roof of the adjacent building.

Defendant contends the court mistakenly relied on the presence of other occupants in the apartment to justify the continued search. He maintains "the court's timeline is patently incorrect," asserting the testimony and body-worn camera footage show that all occupants had been removed from the apartment before the firearms were recovered. We disagree. It was inherently within the

13

scope of exigent circumstances for the police to search and seize weapons to reduce the danger to the apartment's occupants before they returned to the apartment.

Sixth, the officers had probable cause. Their observations of defendant on the live-stream surveillance cameras, coupled with their immediate identification of him fleeing into the residential building, provided a basis for probable cause.

Defendant further argues the court erred in not finding the adjacent rooftop was entitled to constitutional protection and in concluding the State had established the rooftop was separate from the apartment building in which he was arrested. We disagree with defendant.

"[C]onstitutional protection against unlawful searches and seizures applies with maximum force to governmental intrusions into the home." Ingram, 474 N.J. Super. at 535. Thus, "a home's curtilage, the area immediately surrounding and associated with the home, is protected by the Fourth Amendment, like the home itself." Ibid.; see also State v. Domicz, 188 N.J. 285, 302 (2006) (noting the curtilage "may include walkways, driveways, and porches"). "[T]he seizure of an item seen within the curtilage is not invalid if

the officer had a right to be at his vantage point, such as a semi-private area or on the street." State v. Lane, 393 N.J. Super. 132, 146 (App. Div. 2007).

Physical "evidence seized will not be suppressed if the suspect abandoned it." State v. Farinich, 179 N.J. Super. 1, 5 (App. Div. 1981). "[A] defendant abandons property 'when he voluntarily discards, leaves behind, or otherwise relinquishes his interest in the property in question so that he can no longer retain a reasonable expectation of privacy . . . at the time of the search.'" State v. Carroll, 386 N.J. Super. 143, 160 (App. Div. 2006) (quoting Farinich, 179 N.J. Super. at 6). We defer to a trial court's finding of abandonment of personal property "if the finding could reasonably have been reached on sufficient credible evidence present in the record." Farinich, 179 N.J. Super. at 6.

Following the conclusion of the suppression hearing after remand, the court found the roof of the adjacent structure where officers recovered the firearms was not part of the building "[d]efendant had entered" and in which he was arrested and, therefore, did not fall within the curtilage of the apartment. The court explained the State's video evidence revealed officers had recovered the firearms from a roof next door, not from the roof of the building where defendant was arrested. The court found the building where defendant was arrested is a two-story structure, while the adjacent roof and garage where

15

officers recovered the firearms is "a separate and distinct" one-story structure. The court further found defendant had voluntarily discarded the firearms onto the neighboring roof, thereby relinquishing any property interest in them.

We previously affirmed the December 13, 2023 order allowing the presentation of additional evidence addressing whether the rooftop was part of the same structure as the apartment where defendant was arrested. Smith, slip op. at 28. We reject defendant's assertion the court again improperly reopened the suppression hearing when it accepted the State's response to defense counsel's July 18, 2024 letter.

The record supports the court's findings. The evidence established the firearms were recovered from the roof of an adjacent structure, not from the building in which defendant was arrested or its curtilage. Because the weapons had been discarded on the roof of the adjacent structure and outside the apartment's curtilage, the trial court's conclusion defendant had abandoned the firearms and therefore lacked a protected interest in them was supported by the evidence in the record and applicable legal principles.

Accordingly, we affirm the August 2, 2024 order denying defendant's suppression motion and his subsequent conviction.

A-1080-24

Defendant challenges the court's imposition of a five-year parole disqualifier, arguing N.J.S.A. 2C:39-5(j) is a substantive offense not listed in the Graves Act and, therefore, does not mandate a period of parole ineligibility. When defendant filed this appeal, the appeal of our decision in State v. Cromedy, 478 N.J. Super. 157 (App. Div. 2024), was pending before the Supreme Court. See State v. Cromedy, 258 N.J. 576 (2024) (granting petition for certification). The Court subsequently issued its decision. See Cromedy, 261 N.J. at 421. Defendant contends we must remand the case for resentencing in light of the Court's decision. We agree.

"The Graves Act, N.J.S.A. 2C:43-6(c), 'prescribes a minimum term of incarceration for certain firearm-related offenses.'" Id. at 431 (quoting State v. Benjamin, 228 N.J. 358, 360 (2017)). N.J.S.A. 2C:39-5(j) "constitutes a substantive first-degree crime, not a sentencing enhancement, and is not subject to the Graves Act." Id. at 434. "[T]herefore, a sentence under that provision does not carry the Graves Act's mandatory period of parole ineligibility." Id. at 433.

The State argues that even if defendant's crime is not subject to the Graves Act, the court had discretion to impose a period of parole ineligibility. See id.

at 440 (finding, "even without the Graves Act, a court can sentence a person convicted of violating only N.J.S.A. 2C:39-5(j) to a period of parole ineligibility pursuant to N.J.S.A. 2C:43-6(b)"). The State argues we should affirm the sentence because imposing a parole-ineligibility period was within the court's discretion and the court sentenced defendant consistent with the terms of the plea agreement.

We recognize the court imposed a sentence that was consistent with the plea agreement and that it had the authority to include in the sentence a parole-ineligibility period. However, the court indicated during the sentencing hearing and in the judgment of conviction that it was imposing the sentence "pursuant to the Graves Act." Applying the Court's holding in Cromedy, a sentence under N.J.S.A. 2C:39-5(j) "does not carry the Graves Act's mandatory period of parole ineligibility." Id. at 433. Accordingly, to ensure defendant's sentence is not clouded by a misapplication of the Graves Act, we vacate defendant's sentence and remand for resentencing in light of the Court's decision in Cromedy. We take no position on the outcome of the resentencing proceeding.

Affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1080-24