899 A.2d 998 (2006)
386 N.J. Super. 143
STATE of New Jersey, Plaintiff-Respondent,
v.
Ernest CARROLL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 7, 2006.
Decided June 12, 2006.
*999 Yvonne Smith Segars, Public Defender, attorney for appellant (Sylvia M. Orenstein, Assistant Deputy Public Defender, of counsel and on the brief).
Zulima V. Farber, Attorney General, attorney for respondent (Jeanne Screen, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, PAYNE, and SABATINO.
The opinion of the court was delivered by
SABATINO, J.S.C., temporarily assigned.
This appeal requires us to review an order sustaining an automobile search following a defendant's arrest, and the seizure *1000 of a plastic bag of narcotics found within the automobile. For reasons slightly different than those posited by the trial court, we uphold the search and seizure. Because defendant's challenge to the search and seizure is the sole basis for his appeal, we affirm his convictions for various offenses predicated on the fruits of that search.

I.
On the afternoon of August 15, 2004, Atlantic City Police Officer Frank Timek observed a brown Buick sedan parked in front of the Endicott Hotel. Officer Timek recognized the sedan driver as defendant Ernest Carroll from a photograph that he had been shown earlier that day by another officer, describing Carroll as a suspected new drug dealer in the area. Carroll had been apprehended for drug dealing twelve days before, on August 3, 2004, and was released.
Officer Timek observed defendant enter the hotel building empty-handed and emerge about ten minutes later carrying a bluish plastic bag. Defendant placed the bag on the passenger seat of the Buick and drove away.
After noticing, among other things, that the Buick lacked a license plate or registration tag and that its middle brake light was not working, Officer Timek pursued the Buick in his patrol car and activated his siren and emergency lights. The Buick did not stop. Officer Timek continued to follow the Buick, with another responding patrol car, driven by Officer Richard Lasko, following behind Officer Timek.
During the course of the pursuit, Officer Timek observed defendant attempt to push the plastic bag through the driver's side window. However, defendant was unsuccessful in discarding the bag, as it appeared to Officer Timek that the car window was not open wide enough for the bag to fit through. The officer observed that defendant was having difficulty operating the Buick and simultaneously trying to push the bag through the window.
Not heeding the police siren and lights, defendant drove through the city in a southerly direction at a speed between forty and fifty miles per hour, "jumped a curb," and headed east. Defendant then steered into a casino parking lot, where he crashed the Buick into a parked vehicle. He then ran out of the car, leaving the driver's door open and the plastic bag inside, and attempted to flee on foot.
Arriving at the parking lot at the same time as defendant, Officer Timek got out of the patrol car and stood in Carroll's path, shouting at him to turn around and put his hands up in the air. Carroll ignored these police commands, and instead took what Officer Timek described as "a combative stance," raising his hands and clenching his fists.
Officer Timek attempted to place defendant in custody. The two men struggled. Defendant grabbed Timek's shirt and managed to pull the officer, who was on top of him, into the front seat of the Buick. The struggle continued inside of the vehicle for about thirty to forty seconds. At this point Officer Lasko arrived in the second police car. With Lasko's help, Timek was able to handcuff defendant, pat him down for weapons and remove him from the Buick.
After defendant was removed from the Buick and standing, as Officer Timek estimated, about one car length from the vehicle, Officer Timek reached into the Buick. He retrieved the plastic bag, which the officer testified was in plain view on the floor by the front passenger seat. Suspecting that the bag contained a weapon or contraband, Officer Timek looked inside it. The officer found a large white rock, which he suspected was cocaine, wrapped in clear *1001 plastic, a digital scale, and several smaller plastic bags of the kind commonly used for distributing illegal drugs. The officer also retrieved from the Buick identification information and a key on the front seat. The police later determined that the Buick had been stolen about two hours before defendant was observed driving it.
According to Officer Timek's testimony at the suppression hearing, at that point "numerous units" of police cars, which were never quantified in the record, had arrived, along with an EMS unit. The EMS workers treated Officer Timek for a cut on his hand and also treated defendant for some facial injuries. Thereafter, defendant was placed in a patrol car and driven to police headquarters for processing. Officer Timek radioed a supervisor and advised him of the situation, and was then transported by Officer Lasko to the hospital.
Based upon these events, the police stationed a detective in the Endicott Hotel. Later that day, the police applied for a warrant to search a room in the hotel registered to a "Ronald and Tina Wilson," which was suspected to be a place where defendant had conducted drug transactions. Their suspicions were based not only upon the police chase and the seizure of the plastic bag of narcotics from the Buick earlier that day, but also upon other information, including defendant's recent arrest for drug dealing on August 3; the hotel desk clerk's observations of defendant carrying plastic bags out of the hotel and repeatedly coming in and out of the hotel; and defendant's use of a false name ("Ronald Wilson") to register a room at a different hotel.
When presented with an affidavit outlining these details, a municipal judge issued the requested search warrant that evening, finding that there was ample probable cause to justify the search. At about 11:00 p.m., the police executed the search warrant and found in the hotel room several white rocky substances later confirmed to be cocaine, other drug paraphernalia, and three photographs of defendant along with prescription medication in his name.
Defendant was subsequently indicted in Atlantic County on seven charges stemming from the events of August 14, 2004. The charged offenses included third-degree possession of a controlled dangerous substance (CDS), cocaine, in violation of N.J.S.A. 2C:35-10a(1); second-degree possession of at least one-half of an ounce of cocaine, in violation of N.J.S.A. 2C:35-5a(1) and -5b(2); second-degree possession of cocaine with intent to distribute it within 500 feet of a public housing facility, park or building, in violation of N.J.S.A. 2C-35-7.1; third-degree aggravated assault on a police officer (Officer Timek), in violation of N.J.S.A. 2C:12-1b(5); second-degree eluding police causing a risk of death or injury, in violation of N.J.S.A. 2C:29-2b; third-degree resisting arrest by use or threat of physical force against a police officer, in violation of N.J.S.A. 2C:29-2a(1); and third-degree receipt of stolen property, a Buick automobile, in violation of N.J.S.A. 2C:20-7. A separate indictment was issued charging defendant with third-degree possession of cocaine, in violation of N.J.S.A. 2C:35-10a(1), arising out of the conduct that led to defendant's prior arrest on August 3, 2004.
Defendant moved to suppress the State's evidence derived from the August 15, 2004 police chase, automobile search and hotel room search. On January 21, 2005, the trial court conducted a suppression hearing. The sole witnesses at the hearing were Officer Timek and James Brennan, the police detective who had procured the warrant for the hotel room search.
After hearing the police witnesses and considering the arguments of counsel, the *1002 motion judge denied the suppression motion. In his oral ruling, the motion judge found that the police officers' testimony was "palpably reasonable" and consistent. The court ruled that the police had a reasonable basis to stop the automobile and that defendant had shown a "particular resolve to avoid apprehension." The judge specifically found, among other things, that Officer Timek's observation of defendant attempting to push the plastic bag out of the Buick window, a point that defense counsel had probed on cross-examination, was credible. The court also found that the police had probable cause to arrest defendant in the casino parking lot, and that the police had used reasonable force in apprehending and in handcuffing defendant.
With specific regard to the seizure of the plastic bag from the stolen Buick, the trial court first determined that the seizure was justified under the automobile exception to the warrant requirement. Specifically, the motion judge found that the police had probable cause to believe that the vehicle contained contraband, that exigent circumstances were present, and that the police were justified in contemporaneously searching the vehicle at the scene and seizing the plastic bag.
Alternatively, the motion judge found that the warrantless search of the vehicle also could be constitutionally sustained as a search incident to an arrest. The motion judge distinguished the facts here from those described in the Appellate Division's then-unreviewed opinion in State v. Eckel, 374 N.J.Super. 91, 863 A.2d 1044 (App.Div.2004), aff'd, 185 N.J. 523, 888 A.2d 1266 (2006). The judge noted that, given the defendant's "zeal" and "vigor" with which defendant attempted to flee, coupled with the fact that the Buick's door had been left open after the struggle with Officer Timek within the car, there could have been a second attempt by defendant to get back into the vehicle. The judge further described defendant as being within the "wingspan" of the Buick, even if he was not within arm's length of it. Based upon those findings, the trial judge concluded that the search was sustainable under the incident-to-arrest doctrine, notwithstanding this court's opinion in Eckel.
Having validated the automobile search and the seizure of the plastic bag, the motion judge found that the warrant for the ensuing police search of the hotel room was amply supported by probable cause. He therefore concluded that the fruits of that ensuing search likewise would be admissible at trial.
Following the suppression hearing, defendant entered into a negotiated plea, conditioned on his right to appeal the trial court's denial of his suppression motion. Specifically, defendant pled guilty to second-degree possession of CDS with intent to distribute, second-degree eluding and third-degree resisting arrest with respect to his conduct on August 15, 2004. Defendant also pled guilty to a single count of the separate indictment charging him with third-degree possession of CDS on August 3, 2004.
In March 2005 the trial court sentenced defendant in accordance with the conditional plea agreement as follows: an eight-year term, with parole ineligibility of four years, on the second-degree CDS offense; another eight-year term, also with parole ineligibility of four years, on the eluding offense; and five years on the resisting arrest offense. All of those sentences were to run concurrently. The court also sentenced defendant to a five-year term for the third-degree CDS possession offense in the separate indictment regarding the August 3, 2004 incident, that term also to be concurrent with the sentences imposed in the other indictment. Hence, for the two indictments, the aggregate sentence *1003 imposed upon defendant was eight years with a parole ineligibility term of four years.

II.
On appeal, defendant argues that the search of the Buick and the seizure of the plastic bag found in the car were invalid under the Fourth Amendment and under Article I, paragraph 7 of the New Jersey Constitution, and that the fruits of those searches should have been suppressed. In particular, defendant contends that neither the search-incident-to-arrest doctrine nor the automobile exception to the constitutional warrant requirement justified Officer Timek's reentry into the Buick after defendant had been handcuffed.
The State argues that the motion judge properly invoked both of those exceptions. The State alternatively contends that the search and seizure may also be sustained on other grounds not raised below,[1] including a claim that defendant lacked any reasonable expectation of privacy in the contents of the stolen Buick and a claim that defendant abandoned the bluish plastic bag. We address these contentions in turn.

A.
As a general matter, a search incident to a valid arrest is constitutional. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). For decades, the courts of this State construed the incident-to-arrest exception to extend to warrantless searches of a motor vehicle after one or more of its occupants had been arrested for a significant offense and removed from the vehicle. See, e.g., State v. Welsh, 84 N.J. 346, 419 A.2d 1123 (1980). Such incident-to-arrest searches of automobiles were declared valid under the federal constitution in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
However, in State v. Eckel, supra, the New Jersey Supreme Court rejected the Belton doctrine and determined that Article I, paragraph 7 of the New Jersey Constitution does not permit the police to search a motor vehicle without a warrant after arresting, removing and securing the occupants of that vehicle, unless some other exception to the constitutional warrant requirement applies. 185 N.J. at 541, 888 A.2d 1266.
Factually, Eckel involved a defendant who had an outstanding arrest warrant for failing to appear in municipal court. The police received a report that defendant and his girlfriend were in a car owned by the girlfriend's parents, which the parents had reported as stolen. A police officer who received that report then observed the girlfriend drive the vehicle out of defendant's driveway, with defendant seated in the front passenger seat. Id. at 524, 888 A.2d 1266. The officer stopped the car, asked defendant to get out, and placed defendant under arrest. Defendant was handcuffed and placed in the police car. The girlfriend then asked the police officer for permission to give defendant clothing he had left in her parents' car. The officer, concerned for his safety, went back to the car to retrieve the clothing himself. Id. at 525, 888 A.2d 1266. Upon lifting the clothing from the rear of the car, the officer discovered marijuana, cocaine and other drug paraphernalia. Id. at 525-26, 888 A.2d 1266.
Our Supreme Court in Eckel held that under such facts, where the defendant occupying *1004 the vehicle had been "arrested, removed and secured elsewhere," the justifications supporting the incident-to-arrest exception, i.e., the arresting officer's safety and the preservation of evidence, are absent. Id. at 541, 888 A.2d 1266. Accordingly, the Court held that the post-arrest search of the automobile in Eckel would be invalid under the New Jersey Constitution, unless some other recognized exception to the warrant requirement applied. Id. at 542, 888 A.2d 1266. Significantly, the Court in Eckel did not reverse defendant's conviction. Instead, it remanded the case to this court to consider alternative doctrines that the trial judge had relied upon to sustain the search, including consent, the plain view doctrine, and the automobile exception to the warrant requirement. Ibid.
Similarly, in State v. Dunlap, 185 N.J. 543, 888 A.2d 1278 (2006), the Court rejected the State's reliance on the incident-to-arrest exception where the defendant had left his vehicle and had been arrested and secured away from the vehicle by the police. In Dunlap, a mother reported to the police that she had discovered a handgun and illegal drugs in her daughter's bedroom. Id., 185 N.J. at 544, 888 A.2d 1278. With the mother's permission, the police searched the bedroom and observed a "jail photograph" of defendant on the wall. Ibid. Further investigation revealed that defendant was on parole and was believed to be dealing and transporting narcotics and carrying a gun. Id. at 545, 888 A.2d 1278. The police tracked down the daughter and placed her under arrest for narcotics and weapons violations. She informed the police that the drugs and firearm belonged to defendant. Ibid. At the police's request, the daughter telephoned defendant and asked him to come to her house.
About twenty minutes later the defendant in Dunlap arrived and parked his vehicle in front of the girlfriend's home. Ibid. After he got out of his car and began walking towards the residence, two police officers tackled the defendant. He was then arrested and secured on the front lawn, in the presence of about ten police officers who had gathered at the scene. Ibid. The police took defendant's keys, unlocked his car, and entered the passenger compartment, where they smelled burnt marijuana. Ibid. The police then searched the car and discovered heroin and a handgun inside. Id. at 546, 888 A.2d 1278.
Consistent with its reasoning in Eckel, the Court in Dunlap rejected the State's contention that the search of the defendant's car was authorized under the incident-to-arrest doctrine. Id. at 549, 888 A.2d 1278. The Court ruled that the exception "cannot be invoked where a defendant has no capacity to reach the interior of the vehicle to destroy evidence or to endanger the police." Id. at 548-49, 888 A.2d 1278. Because Dunlap had been removed and secured away from his car on the front lawn by several police officers, the Court found the incident-to-arrest exception inapplicable. Id. at 549, 888 A.2d 1278. The Court also rejected, for reasons we shall discuss in more detail below, the State's alternative claim that the search of Dunlap's car fell within the automobile exception Id. at 549-50, 888 A.2d 1278.
Here, there is no question that the police had probable cause on August 15, 2004 to arrest Ernest Carroll in the casino parking lot, given the information it had about his recent involvement in drug dealing; his suspicious retrieval of the bluish bag from the hotel room; his multiple motor vehicle violations observed by Officer Timek; his failure to respond to police commands to stop his vehicle and his subsequent evasive driving; his failed attempt to discard the bag through the car window; and his effort to flee the scene *1005 after crashing the car into a parked vehicle. Defendant does not challenge the validity of the police chase that led to that arrest, which was consistent with the stop-and-frisk tenets of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The pertinent question then becomes whether or not the police search of the Buick in the parking lot after Carroll had been apprehended can be justified under the incident-to-arrest exception, in light of Eckel and Dunlap. We conclude that it cannot.[2]
As in Eckel and Dunlap, the police in this case had arrested defendant and secured him at a distance from the vehicle before searching the inside of the Buick. As Officer Timek described the events, defendant had been handcuffed, patted down for weapons, removed from the Buick, placed in the custody of at least one other police officer, and was standing near a police car about "one car length" from the Buick when Officer Timek went inside the Buick and retrieved the plastic bag.
Although the motion judge described defendant's location as being within the "wingspan" of the Buick, the record indicates that defendant was secured one car length away from the Buick after he was placed under arrest, and thus the car was not then within his immediate control. We also reject the motion judge's surmise that defendant, while in handcuffs, might somehow have overcome the police and re-entered the vehicle, a proposition that is not reasonably supported by the record given the simultaneous arrival of several other police cars at the scene. Thus guided by the principles announced in Eckel and Dunlap, we are constrained to reject the trial court's reliance upon the incident-to-arrest exception.

B.
Nonetheless, we find that there are ample independent grounds to sustain the constitutionality of the search of the Buick and the seizure of the plastic bag. One of those grounds is the automobile exception, which indeed was the principal basis for the trial court's denial of the defendant's suppression motion.
The automobile exception to the warrant requirement was first recognized by the United States Supreme Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This exception authorizes police officers who have probable cause to believe that an automobile contains evidence of criminal activity to search that vehicle, based upon the exigent circumstance arising from the vehicle's inherent mobility.
In State v. Cooke, 163 N.J. 657, 751 A.2d 92 (2000), the elements of the automobile exception, as applied in our own State's jurisprudence, were explained in detail. First, there must be probable cause to believe that contraband will be found in the vehicle. On this element, certainty is not required; it is sufficient if the police have a "well grounded suspicion" that evidence of a crime will be found in the car. Cooke, supra, 163 N.J. at 671, 751 A.2d 92. Second, there must be exigent circumstances at the time the car is searched. In Cooke, the Court illustrated this concept by finding exigency in a situation where it was "impracticable" to post a police officer and guard the vehicle, where *1006 third parties were aware of the car's location and that it had been used by defendant to store drugs, and where other parties in the area, which was known for drug-trafficking, could have removed the car. Id. at 675, 751 A.2d 92. Cooke instructs that the presence or absence of exigent circumstances requires a case-by-case evaluation. Id. at 671, 751 A.2d 92.
The automobile exception failed to justify the post-arrest automobile search in Dunlap because of a number of factual circumstances cited by the Supreme Court. The searched vehicle was not parked in an open area, but rather on the street in a residential neighborhood. Dunlap, supra, 185 N.J. at 550, 888 A.2d 1278. There was no evidence that third persons were aware of the car's location. Ibid. There were at least ten police officers on the scene, and "the State did not establish that an insufficient number would have been left to guard the car." Ibid.
The Supreme Court in Dunlap emphasized, however, that its invalidation of the search in that case should not be overread as a general repudiation of the automobile exception in post-arrest situations. As the Supreme Court declared at the end of its opinion:
Nothing in this opinion should be viewed as a retrenchment from the well-established principles governing the automobile exception to the warrant requirement.... The standards remain the same: probable cause and exigent circumstances, each of which to be determined on a case-by-case basis.
[State v. Dunlap, supra, 185 N.J. at 551, 888 A.2d 1278.]
Dunlap is quite different from the case at hand, in that the police in Dunlap created the physical context for defendant's arrest by prompting his girlfriend to ask him to drive to her residence. That request afforded the police the time to assemble at the residence, to anticipate defendant's arrival, and to effectuate his planned arrest. There is no indication in Dunlap that the defendant attempted to elude his arrest or offer any physical resistance. Indeed, the Court in Dunlap stressed that its ruling was based upon the "unique facts" of that case, and that "[p]olice safety and the preservation of evidence remain the preeminent determinants of exigency." Ibid.
By contrast, the police pursuit of defendant in this case was spontaneous. The location of defendant's arrest was completely unplanned. Defendant drove the Buick to an unanticipated location, which turned out to be an open parking area used by casino patrons. Defendant had caused a motor vehicle accident by smashing a parked car, presumably causing property damage to both vehicles that the police would need to inspect and address.
Defendant's behavior in avoiding and resisting his arrest also heightened the exigency. He ran from the car, leaving the car door open. He physically resisted Officer Timek when he was caught, managing to pull the officer back into the Buick before he was finally handcuffed. His volatile conduct increased the police's need to secure him and the location promptly.
Defendant's frantic effort to discard the plastic bag during the police pursuit of the Buick also enhanced the emergent character of the situation. Officer Timek had ample reason to suspect that the bag contained drugs, a weapon, or both. Its contents, if they fell into the hands of another, reasonably could have posed a danger to casino patrons or others passing through the open public space in the parking lot. Considering all of these factors, the motion judge had a more than sufficient basis to regard these circumstances as exigent, and to find that Officer Timek possessed probable cause to believe that the plastic bag contained contraband.
*1007 As the Supreme Court emphasized in Cooke:
"[E]xigent circumstances do not dissipate simply because the particular occupants of the vehicle have been removed from the car, arrested, or otherwise restricted in their freedom of movement."... That is a sound rule because, until the vehicle is seized by the police and removed from the scene, "it is potentially accessible to third persons who might move or damage it or remove or destroy evidence contained in it."
[Cooke, supra, 163 N.J. at 672, 751 A.2d 92 (quoting State v. Alston, 88 N.J. 211, 234, 440 A.2d 1311 (1981)).]
Those principles equally apply here. The Buick that defendant drove into the casino parking lot was potentially accessible to third persons who might have "remove[d] or destroy[ed] evidence contained within it." His arrest did not eliminate those exigent risks. We note in this regard that Officer Timek was injured by defendant, and that another officer needed to transport him to the hospital shortly after defendant's arrest. Defendant also needed medical attention, requiring police oversight while EMT workers were treating him at the scene. The two vehicles involved in the collision needed to be inspected, secured and possibly repaired.
Hence, the police had a variety of functions to accomplish at the scene of the accident and defendant's apprehension in a very short time. The record does not disclose how many patrol cars and policemen arrived at the scene after Officers Timek and Lasko. Even if multiple officers were present, we do not find that the police needed to "stand guard" over the Buick while concurrently applying to a judge for a search warrant. See State v. Colvin, 123 N.J. 428, 435, 587 A.2d 1278 (1991); see also State v. Cooke, supra, 163 N.J. at 675, 751 A.2d 92 (deeming it impracticable, in the factual context of that case, to require a police officer to leave his surveillance post and stand guard over the vehicle).
For these reasons, we affirm the motion judge's reliance on the automobile exception to validate Officer Timek's search of the Buick and his seizure of the bluish plastic bag in plain view on the floor of the car's passenger side. We also discern no constitutional violation, and none is asserted by defendant, in Officer Timek opening the plastic bag once he had secured it. See State v. Guerra, 93 N.J. 146, 459 A.2d 1159 (1983) (permitting the warrantless search of containers found in the course of a valid automobile search where there is probable cause to believe the container holds contraband).

C.
Lastly, although it is not necessary for us to do so, we separately conclude that the motion judge's findings of fact also support a legal inference that defendant had abandoned the plastic bag and had no reasonable privacy interest in it deserving of constitutional protection.[3] For purposes of search-and-seizure analysis, a defendant abandons property "when he voluntarily discards, leaves behind, or otherwise relinquishes his interest in the property in question so that he can no longer retain a reasonable expectation of privacy with regard to it at the time of the search." State v. Farinich, 179 N.J.Super. 1, 6, 430 A.2d 233 (App.Div.1981) (finding abandonment where defendant, after being approached by the police in an airport, dropped his suitcase and started to run away), aff'd o.b., 89 N.J. 378, 446 A.2d 120 *1008 (1982); see also State v. Hughes, 296 N.J.Super. 291, 296, 686 A.2d 1208 (App. Div.) (defendant on a bicycle held to have abandoned a container filled with bags of cocaine, because he threw the container against a curb when he noticed a police car approaching, and then continued to bicycle another fifty feet away), certif. denied, 149 N.J. 410, 694 A.2d 195 (1997).
Here, the facts determined by the trial judge indicate that defendant had abandoned both the stolen Buick and the plastic bag left within it, before he was apprehended by Officer Timek. Defendant indisputably ran away from the Buick after crashing it into a parked vehicle. He left the door of the vehicle open. The Buick had been stolen from its rightful owners. Defendant simply had no legitimate expectation of privacy in a stolen car that he left in a public space, fleeing from the scene of an accident.
Likewise, the evidence amply shows that defendant abandoned the contraband-filled plastic bag by leaving it in plain view on the floor of a stolen car at the accident scene. Defendant's obvious and sustained desire to rid himself of the bag once the police began pursuing him is corroborated by his futile attempts to discard it out the driver's side window of the Buick while being chased. See also Shackleford v. Commonwealth, 262 Va. 196, 547 S.E.2d 899, 906 (2001) (holding that defendant had abandoned a bag containing a gun and drugs, which he had deliberately left behind in a taxi that had transported him to a motel, when he determined that he was being followed by police).
Even if the evidence were not construed to support a finding that defendant had abandoned the plastic bag, his course of conduct surely bespeaks at least a severely diminished expectation of any privacy in the bag and its contents. That diminished privacy expectation, combined with the exigent circumstances surrounding the search, bolsters our conclusion that the police's warrantless seizure of the plastic bag and the immediate inspection of its contents was eminently reasonable. The "touchstone of the Fourth Amendment is [the] reasonableness" of police action. State v. Bruzzese, 94 N.J. 210, 217, 463 A.2d 320 (1983), (citing Delaware v. Prouse, 440 U.S. 648, 653-55, 99 S.Ct. 1391, 1395-97, 59 L.Ed.2d 660, 667-68 (1979)), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984).
We thus affirm the trial court's denial of the motion to suppress the plastic bag and its contents that Officer Timek seized from the stolen Buick. We also affirm the trial court's denial of the defendant's motion to suppress the evidence found in the search of defendant's hotel room, after the police had discovered contraband in the plastic bag. Such evidence is the fruit of a constitutional search and seizure that led to the issuance of a valid warrant predicated upon probable cause. See Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453 (1963) (only the fruits of an illegal search are to be excluded); State v. Evers, 175 N.J. 355, 381, 815 A.2d 432 (2003) (a search warrant is presumed to be valid, and defendant has the burden of showing that it was issued without probable cause).
Affirmed.
NOTES
[1] Defendant chose not to file a reply brief addressing these additional legal arguments. Neither counsel requested oral argument, nor did they seek to file supplemental briefs after the Supreme Court's opinions were issued in State v. Eckel, supra, and its companion opinion in State v. Dunlap, 185 N.J. 543, 888 A.2d 1278 (2006).
[2] For purposes of this analysis we assume for the sake of argument, but do not decide, that Eckel and Dunlap have pipeline retroactivity to this appeal, which was pending at the time those cases were decided by the Supreme Court. At a minimum, this court's December 2004 opinion in Eckel, which was subsequently affirmed by the Supreme Court in January 2006, would control the suppression hearing conducted in January 2005.
[3] See State v. Maples, 346 N.J.Super. 408, 416-17, 788 A.2d 314 (App.Div.2002) (upholding trial court's denial of suppression motion for different legal reasons than those identified below, as appellate courts "affirm or reverse judgments and orders, not reasons").