**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4454-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAVID WILEY,

    Defendant-Appellant.

_____

Submitted January 29, 2019 – Decided May 16, 2019

Before Judges Suter and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-02-0266.

Joseph E. Krakora, Public Defender, attorney for appellant (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Jaimee M. Chasmer, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals his June 13, 2017 judgment of conviction, arguing that the trial court erred by denying his motion to suppress evidence of a gun. We affirm.

An eight-count indictment was returned against defendant. The first three counts related to defendant's involvement with the shooting death of Joshua Taylor on August 8, 2014. The remaining counts related to his possession of a gun a few days later that was connected to Thomas' death. Defendant's motions to suppress evidence of the gun, to sever charges, to reduce his bail and to suppress his statement given to police prior to his arrest, were all denied.

Defendant pleaded guilty in May 2017 to an amended charge of first-degree aggravated manslaughter with extreme indifference to human life, N.J.S.A. 2C:11-4(a)(1), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). During the factual basis for the plea, defendant acknowledged he was found in possession of a gun on and that it was his intention to use the gun unlawfully against another person.

Defendant was sentenced to a ten-year term for aggravated manslaughter, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and a concurrent eight-year term for the gun possession charge, subject to a four-year parole disqualifier under the Graves Act, N.J.S.A. 2C:43-6(c).

A-4454-17T4

I

Officers Joamie Fernandez and Mark Hennessey were on patrol in Jersey City at 4:00 a.m. on August 16, 2014, when they turned onto Martin Luther King Drive. Fernandez testified at the suppression hearing that he saw four people about 250 feet away at the next intersection, which was well-lit. He recognized defendant, who was standing astride a bicycle, because they had taken the same English class in high school. When the officers were about twenty to twenty-five feet away, Hennessy "pointed out the male on the bike and said [']gun[']." Defendant's hoodie was not covering his waistband.

Fernandez saw the silver and black handle of a gun. He testified that right after that, he saw defendant "grab the handle of the weapon, move it over to his right side and peddle away with his left hand." Fernandez activated the lights and siren, and "told [defendant] to stop." Defendant continued to peddle away, but in a short time, jumped off the bike and ran. Fernandez pursued defendant on foot and saw him "remove the handgun and [throw] it on the ground." Fernandez picked up the gun and continued to chase defendant, who ran into an alley. He could not find him, but other officers arrested defendant a block away.

Hennessy testified that he saw the gun when he was about half a block away and told Fernandez. As they approached in the patrol car, defendant

3

"started to move the bike and adjust the gun and drove off." He saw defendant slide the gun from the front of his waistband to his hip. Defendant "backed up and started to turn the bike to go away." All of this happened before the police told defendant to stop. He acknowledged that he discussed his report about four or five times with Fernandez.

The trial court denied defendant's motion to suppress the gun because defendant had no "reasonable expectation of privacy" in it, and because the plain view exception applied. Without making an express finding of credibility, the court accepted the officers' testimony that they saw defendant with the gun. The court found that this established "probable cause to effectuate an arrest" and justified the officers in approaching defendant. Defendant then "knowingly and voluntarily discarded the gun when he fled police in an attempt to get rid of evidence" and did so "without any coercion by police." The court found defendant had no reasonable expectation of privacy in the gun because he abandoned it. Even if there were some expectation of privacy, the court found the plain view exception applied. The court concluded that "[b]ased on the observation[s] and experience of the police officers, the incriminating character of the handgun was readily apparent . . . ."

Defendant appeals, raising a single issue:

THE POLICE LACKED SUFFICIENT CAUSE FOR THE SEIZURE OF THE DEFENDANT, NECESSITATING SUPPRESSION.

We affirm the order that denied defendant's suppression motion.

II

"When reviewing a trial court's decision to grant or deny a suppression motion, [we] 'must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). "We will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'" Ibid. (quoting Hubbard, 222 N.J. at 262). "We accord no deference, however, to a trial court's interpretation of law, which we review de novo." Ibid. (citing State v. Hathaway, 222 N.J. 453, 467 (2015); State v. Hinton, 216 N.J. 211, 228 (2013)); see also State v. Terry, 232 N.J. 218, 230 (2018).

Both the federal and State constitutions protect citizens against unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see Terry, 232 N.J. at 231. "'The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts.'" Terry, 232 N.J. at 231 (quoting South Dakota v. Opperman, 428 U.S. 364, 372-73 (1976)).

A-4454-17T4

There are three types of interactions with law enforcement that involve different constitutional implications. "A field inquiry is essentially a voluntary encounter between the police and a member of the public in which police ask questions and do not compel an individual to answer." State v. Rosario, 229 N.J. 263, 271 (2017). Because there is no restriction from movement in these circumstances, law enforcement does not generally need to have a well-grounded suspicion of criminal activity. State v. Elders, 192 N.J. 224, 246 (2007) (citing State v. Rodriquez, 172 N.J. 117, 126 (2002)).

An investigatory stop or detention, sometimes referred to as a Terry[1] stop, implicates constitutional requirements, and must be based on "specific and articulable facts which, taken together with rational inferences from those facts," provide a "reasonable suspicion of criminal activity." Elders, 192 N.J. at 247 (quoting Rodriquez, 172 N.J. at 126). "Because an investigative detention is a temporary seizure that restricts a person's movement, it must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'" Rosario, 229 N.J. at 272 (alteration in original) (quoting State v. Stovall, 170 N.J. 346, 356 (2002)).

---

[1] Terry v. Ohio, 392 U.S. 1, 27 (1968).

A-4454-17T4

Reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity." Stovall, 170 N.J. at 356 (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). The officer's "'articulable reasons' or 'particularized suspicion'" is based on the officer's assessment of the totality of the circumstances. State v. Davis, 104 N.J. 490, 504 (1986). The officer must "be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" Stovall, 170 N.J. at 357 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

The third type of interaction is an arrest. Rosario, 229 N.J. at 272. Arrests require "probable cause and generally [are] supported by an arrest warrant or by demonstration of grounds that would have justified one." Ibid.

Defendant contends that he was just standing with others on a street corner with others not doing anything visibly wrong. He argues his conduct did not justify a police stop. The problem was that the police saw the gun. Officers have a duty to investigate suspicious behavior. Stovall, 170 N.J. at 363; Davis, 104 N.J. at 503. It was reasonable for the police to believe that someone standing on a corner in Jersey City at 4:00 a.m., with a gun at his waist, who moves it to his side when he sees the police, is engaged in some type of criminal activity. The totality of the circumstances can include the officer's "independent

observation and law enforcement experience." Stovall, 170 N.J. at 361. The gun gave the police a reasonable suspicion to believe that defendant was engaged in criminal activity. We are satisfied that the totality of the circumstances provided a reasonable, articulable suspicion that defendant was about to or had engaged in criminal activity and that this was a valid investigatory stop.

We do not agree with defendant that this case is similar to State v. Tucker, 136 N.J. 158 (1994). There, the defendant was sitting on a curb when he saw the police and fled. As the police pursued him, he discarded packets which contained cocaine. The Court found there was no reasonable, articulable basis for the police to stop the defendant merely because he fled when he saw the police. That was not the situation in this case because the police saw the gun.

The trial court held that because defendant abandoned the gun he had no expectation of privacy in it. The question for purposes of the Fourth Amendment is whether the defendant relinquished his reasonable expectation of privacy in the discarded property. State v Burgos, 185 N.J. Super. 424, 426-27 (App. Div. 1982). "[A] defendant abandons property 'when he voluntarily discards, leaves behind or otherwise relinquishes his interest in the property in question so that he can no longer retain a reasonable expectation of privacy with

regard to it at the time of a search.'" State v. Carroll, 386 N.J. Super. 143, 160 (App. Div. 2006) (quoting State v. Farinich, 179 N.J. Super. 1, 6 (App. Div. 1981)).

In Tucker, the Court held that the defendant did not abandon his privacy interests because the drugs were obtained as the product of an illegal seizure. 136 N.J. at 172. In this case, the police had a reasonable articulable suspicion to stop defendant and to pursue him once he fled. Defendant dropped the gun as Officer Fernandez pursued him. His action in discarding the gun was an abandonment because it was not the "product of an illegal seizure." Ibid. By abandoning the gun, defendant lost any expectation of privacy in it, and there was no basis for him to assert a constitutionally protected privacy interest. Carroll, 386 N.J. Super. at 160.

We affirm the trial court's denial of defendant's suppression motion and judgment of conviction. Defendant's remaining arguments regarding the suppression motion lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4454-17T4