**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0494-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KENYON S. ESANNASON,
a/k/a KENYON ESANNASON,

    Defendant-Appellant.

_____

Submitted February 26, 2025 – Decided June 25, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 22-11-0727.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Margaret McLane and Alison Gifford, Assistant Deputy Public Defenders, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Deborah Bartolomey, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

After his conviction upon pleading guilty to second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b)(1), defendant Kenyon S. Esannason appeals the trial court's April 3, 2023 order denying his motion to suppress a handgun seized after a warrantless search of a bag inside a stolen car in which defendant was a passenger. The car's driver had led police on a high-speed chase ending when the vehicle crashed, after which defendant and other occupants fled on foot. Police received information that the car was stolen and searched the car's interior at the scene, including the bag located on the rear seat. Although we determine the motion court failed to adequately address the issue of abandonment in justifying the search on that basis, we nevertheless conclude the court did not misapply its discretion in denying suppression of the gun under the automobile exception to the warrant requirement. We affirm.

I.

We derive the following facts from the record of the suppression hearing, which included testimony from four police witnesses and police video recordings of the relevant events. At 3:26 a.m. on August 7, 2022, Mountain Lakes Patrolman Dickenson Clayton sat in a marked police vehicle by a stop sign on the border of Boonton and Mountain Lakes monitoring for traffic

violations when he observed a dark-colored BMW SUV "roll through the stop sign with its right blinker on."

Officer Clayton explained he was positioned adjacent to Boonton Patrolman Stephen Cherichella, when the BMW's driver, upon seeing the officer, "redirected . . . and then accelerated." Motor Vehicle Recording (MVR) footage from the officer's vehicle demonstrated the BMW picked up speed as the officer attempted to "close the gap" to effectuate a stop. As described by Officer Clayton, the BMW "continued to accelerate and then it failed to stop at [a] stop sign," reaching "upwards of [eighty] miles per hour" in an area with a twenty-five mile-per-hour speed limit. Although Clayton was driving at fifty miles per hour, he lost sight of the BMW, and radioed for assistance in locating and stopping the speeding vehicle.

Boonton Patrolman Travis Knoedler responded to the call and proceeded to the general area of the BMW's travel as a vehicle matching the description sped through a red light, "heading towards the [I-]287 on-ramp." Officer Knoedler, agreeing he was the "primary officer in the pursuit," called over the police radio for assistance, activated his overhead lights, and attempted to stop the BMW, which continued to speed away. Other officers joined the pursuit and set out tire deflation devices, designed to slow the BMW, which the BMW's

driver swerved to avoid before accelerating over at least a portion of the spiked device, puncturing a tire.

The MVR from Officer Knoedler's vehicle captured the BMW continuing to speed away, corroborating the officer's testimony that the BMW "lost a tire" as it moved on and off a series of highways. The chase continued for approximately eleven minutes, from I-287 to I-80 east and finally onto I-280 eastbound. The vehicle entered I-280 where it is initially a four-lane highway before expanding to six lanes, and then eight, with an even number of lanes running in both directions. The video depicts the speeding BMW weaving between the eastbound lanes, and evading multiple vehicles during the pursuit. Officer Knoedler described the BMW as driven "[h]ighly erratic[ally]" and "very reckless[ly]." During the pursuit, police learned the BMW had been stolen.

The BMW continued to weave around other vehicles and elude police before suddenly maneuvering across three lanes from the left-most lane onto an exit ramp, violently crashing into a guardrail, becoming airborne, and landing in the opposite direction facing the pursuing officers. There were five occupants in the car, three of whom immediately fled on foot. Two others emerged and dropped to the ground when faced with officers with guns drawn.

4

Officer Cherichella, who eventually caught up to the vehicles, described seeing one of the occupants flee the wrecked BMW and run to a white BMW that the officer had previously observed "paralleling" the chase proceeding eastbound against traffic in the westbound lanes of the highway prior to the crash. He described that, after the crash, the white BMW "had swung around and was waiting for those occupants to . . . drive them away from the scene. And that one occupant did end up entering that vehicle and . . . [it] sped off at a rapid rate of speed."

Officer Knoedler recounted the occupants immediately running from the crashed vehicle as officers converged. Officer Knoedler testified one of the fleeing occupants ran into the woods, so the officer began chasing another suspect, later identified as defendant, who "r[an] across the roadway." Officer Cherichella joined and the two chased defendant across the eight-lane highway, over the divider to the opposite side, and then up an embankment until defendant stopped, trapped when "he hit the sound barrier wall."

Defendant was dressed in a black hooded sweatshirt and ski mask and had a belt under his shirt above waist level, despite having no belt loops in his sweatpants. He was placed under arrest. Video showed other suspects similarly dressed in dark and heavy clothing with some also wearing face coverings.

5

Defendant was placed in a police vehicle, and a second fleeing occupant was also apprehended. State Police Trooper Anthony Moreno testified that he also arrived at the scene to assist and learned the dark BMW had been stolen and that a second BMW drove against traffic "at a high rate of speed" in the opposing westbound lanes, extracting one fleeing occupant who remained at large.

The trooper testified he went to the wrecked BMW and "attempted to look for any factors that would help [the officers] lead to potential identification of the fifth suspect." While using his flashlight, the trooper observed a bag, described as "black fanny pack style," on the rear seat. He unzipped the bag, which contained defendant's driver's license, detecting the bag "had some significant weight to it." He recalled "[b]y the shape and weight, [he] could assume that it was a handgun." The trooper then unzipped another compartment in the bag, locating a loaded nine-millimeter automatic handgun, "with a live round." The search was captured on police body worn camera (BWC). After securing the handgun, he continued the search for credentials.

Defendant moved to suppress the gun, asserting: (1) he had automatic standing to challenge the search; (2) the stop was improper; and (3) the warrantless search was not justified under any exception.

A-0494-23

The State contended defendant lacked standing to challenge the search as he abandoned the car and the bag. It alternatively argued the warrantless search was justified as a credential search, under the automobile exception, and under the doctrine of inevitable discovery.[1]

The court denied the motion to suppress, by order and accompanying written decision, finding the search lawful on two separate grounds: (1) that defendant abandoned the property and any interest in it; and (2) that the automobile exception to the warrant requirement applied.[2]

The court found "each of the officers' testimony to be credible in all material respects," noting each "answered all questions directly and without hesitation," "was responsive to the questions asked," and gave "reasonable" accounts of events that were "internally consistent" corroborated by "the testimony provided by other officers and . . . the MVR/BWC footage entered into evidence."

---

[1] Although the court questioned, and the State contended, the search was also justified under the doctrine of inevitable discovery, the court did not address that separate basis in deciding the motion, and the State does not raise that justification on appeal.

[2] Although not challenged on appeal, the court first found the State "established by a preponderance of the evidence that reasonable suspicion existed for police to stop the BMW," and probable cause existed to search defendant's person following the crash.

A-0494-23

First, considering the State's argument that defendant lacked standing as he abandoned the property, the court identified the following legal principles:

> A defendant abandons property for the purposes of a search-and-seizure analysis when "he voluntarily discards, leaves behind, or otherwise relinquishes . . . his interest in the property in question so that he can no longer retain a reasonable expectation of privacy with regard to it at the time of the search." State v. Farinich, 179 N.J. Super. 1, 6 (App. Div. 1981). Furthermore, it's the defendant's burden to show that "a reasonable or legitimate expectation of privacy was trammeled by government authorities." State v. Hinton, 216 N.J. 211, 233 (2013) (quoting State v. Evers, 175 N.J. 355, 368-69 (2003)[)].
>
> A defendant "must have a legitimate expectation of privacy in the place searched or items seized to establish Fourth Amendment standing." State v. Bruns, 172 N.J. 40, 46 (2002). For standing purposes property is abandoned if: "(1) a person has either actual or constructive control or dominion over property; (2) he knowingly and voluntarily relinquishes any possessory or ownership interest in the property; and (3) there are no other apparent or known owners of the property." State v. Carvajal, 202 N.J. 214, 225 (2010).

The court then found defendant had abandoned the property, offering the following reasoning:

> [A]fter an extended police pursuit in which [d]efendant was traveling in a stolen vehicle that crashed, [d]efendant fled the vehicle with all other occupants of the BMW SUV and left his bag behind inside the crashed vehicle on a public roadway. Defendant's actions indicate that he abandoned or at the very least

8

had a severely diminished expectation of privacy in the bag, which would make the seizure reasonable. See State v. Carroll, 386 N.J. Super. 143, 160-61 (App. Div. 2006) (finding that the warrantless search of [the] defendant's bag was valid because he "simply had no legitimate expectation of privacy in his bag left inside a stolen car that he left in a public space after fleeing from the scene of an accident"). Likewise, based upon the attendant circumstances, [d]efendant has failed to establish any reasonable or legitimate expectation of privacy in the property that he left inside the stolen BMW SUV or that said expectation was "trammeled by government authorities." Hinton, 216 N.J. at 233. Accordingly, the [c]ourt concludes that the abandonment exception permitted the warrantless search of the BMW SUV.

The court also found the automobile exception justified the search, determining "there was probable cause to believe that contraband or further evidence of an offense could be discovered in the BMW . . . based upon the extent to which the suspects went to avoid capture and their flight from the vehicle after the crash." The court noted that "a fifth suspect fled the scene and was not captured," so it was "reasonable to believe that evidence within the car could have led to his identification." The court deemed the circumstances leading to the search were "unforeseeable and spontaneous and not part of a pre-planned operation," finding the officers only pursued and searched the vehicle after spontaneously observing the car engaged in multiple motor vehicle violations and later confirming the car was stolen.

9

Defendant raises the following arguments on appeal:

POINT I

THE TRIAL COURT ERRED IN DENYING THE SUPPRESSION MOTION BECAUSE DEFENDANT HAS STANDING TO CHALLENGE THE SEARCH OF THE CLOSED BAG INSIDE THE CAR, AND NO EXCEPTION TO THE WARRANT REQUIREMENT PERMITTED THAT SEARCH.

A. Defendant Has Standing Because There Were Other Potential Owners Of The Bag, And He Did Not Abandon The Bag When He Temporarily Fled From The Car After It Had Crashed.

B. The Warrantless Search Of The Bag Was Improper Because The Police Did Not Have Probable Cause To Search The Bag, Nor Did Any Other Exception To The Warrant Requirement Apply.

Defendant contends the trial court erred in finding defendant abandoned the property, arguing the court improperly shifted the burden of proof from the State to him and failed to employ the proper three-part legal standard for abandonment as announced in State v. Johnson, 193 N.J. 528, 549 (2008). Defendant further asserts that the State cannot belatedly raise trespass as an alternative consideration to defeat his automatic standing. He also contends the court erred in finding the warrantless search was reasonable under the automobile exception.

The State argues the record supports the court's denying suppression because: (1) defendant lacked standing to challenge the search after abandoning both the car and his bag when he fled the scene of the crash and was nonetheless trespassing in the stolen vehicle; (2) defendant had no reasonable expectation of privacy in the stolen vehicle; and (3) the automobile exception applied as police had probable cause that a crime was committed arising from the circumstances, which were both unforeseeable and spontaneous.

III.

"[O]ur review of a trial court's factual findings on a motion to suppress evidence is limited." State v. Gartrell, 256 N.J. 241, 250 (2024). "A trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). We afford such deference because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting Elders, 192 N.J. at 244). By contrast, "[w]e review legal determinations, including the application of the law to undisputed facts, de novo, with no special deference." State v.

, 465 N.J. Super. 181, 189 (App. Div. 2020) (citing State v. Hagans, 233 N.J. 30, 38 (2018)).

Well-settled constitutional principles govern our analysis. Both the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of our State Constitution protect "against unreasonable searches and seizures" and prohibit the issuance of warrants in the absence of probable cause. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see also State v. Robinson, 228 N.J. 529, 543-44 (2017). "[S]earches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting Elders, 192 N.J. at 246). "[T]he State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it 'f[ell] within one of the few well-delineated exceptions to the warrant requirement.'" State v. Bryant, 227 N.J. 60, 69-70 (2016) (second alteration in original) (quoting Johnson, 193 N.J. at 552).

Preliminarily, however, "[a]ny constitutional challenge to the search of a place or seizure of an item must begin with" a court's considering whether a defendant has standing to contest the search. State v. Randolph, 228 N.J. 566, 581 (2017). When, as in this case, a defendant is charged with having possessed

the seized contraband, automatic standing exists to challenge a search or seizure, unless the State establishes an exception to that broad rule.  See id. at 581, 585.

Three recognized but narrow exceptions exist to otherwise automatic standing, prohibiting a defendant's right to challenge searches:  (1) of "abandoned property"; (2) of "property on which he was trespassing"; or (3) "property from which he was lawfully evicted."  Id. at 585.  "[T]o strip a defendant of automatic standing to challenge a search," the State bears the burden of proving one of these exceptions by a preponderance of the evidence. Ibid. (citing State v. Brown, 216 N.J. 508, 527-28 (2014)).

A.    Abandonment

Here, defendant argues that the trial court erred in shifting the burden to defendant and in employing the incorrect law in determining defendant abandoned the bag.  For standing purposes, the law concerning abandonment is clear, as is the burden of proof.

Recognizing "abandonment of property strips a person of standing to challenge a search," our Supreme Court established a three-part test to determine whether a defendant abandoned the property searched.  Johnson, 193 N.J. at 547. "The State bears the burden of proving that property was abandoned by a preponderance of the evidence."  Gartrell, 256 N.J. at 251.

13

Specifically, property will be considered abandoned for standing purposes only when the State has demonstrated: "(1) a person has either actual or constructive control or dominion over property; (2) he knowingly and voluntarily relinquishes any possessory or ownership interest in the property; and (3) there are no other apparent or known owners of the property." Ibid. (quoting Carvajal, 202 N.J. at 223); see also Johnson, 193 N.J. at 549 ("For the purposes of standing, property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property.").

In adopting this standard, the Supreme Court departed from the prior consideration centering on whether a defendant possessed a reasonable expectation of privacy in the property. See Gartrell, 256 N.J. at 254 (confirming "we no longer apply the expectation of privacy test referred to in Farinich").

Here, it is unclear from the trial court's decision whether or how the court applied the Johnson factors to assess abandonment for standing purposes, and whether, as defendant suggests, it improperly placed the burden of proof upon defendant. The court cited both the reasonable expectation of privacy standard in Farinich and the Johnson test as applicable law, but was not clear whether it

14

considered defendant abandoned property stripping him of standing, or alternatively found he had standing, but nonetheless lacked a substantive right to privacy.

Significantly, "[a] defendant's automatic standing to file a motion to suppress . . . does not equate to a finding that he or she has a substantive right of privacy in the place searched that mandates the grant of that motion." Hinton, 216 N.J. at 235 (citing Johnson, 193 N.J. at 547). "Even when a defendant has automatic standing, if . . . the merits rest on whether [a] defendant possesses a reasonable expectation of privacy, [a] court must address that issue as part of the substantive constitutional analysis. That inquiry is separate and distinct from the question of standing." Id. at 234.

Because we are unable to discern from the court's findings precisely which standards or burden of proof it applied in reaching its conclusion, we cannot determine that the court properly reached its decision that "the abandonment exception permitted the warrantless search of the BMW SUV," on proper legal principles. Nevertheless, we are satisfied that, even assuming defendant retained standing to challenge the search, the court did not err in determining the automobile exception applied in these circumstances, justifying the warrantless search.

15

B.  Automobile Exception

The automobile exception to the warrant requirement, "authorizes a police officer to conduct a warrantless search of a motor vehicle if it is 'readily mobile' and the officer has 'probable cause' to believe that the vehicle contains contraband or evidence of an offense." State v. Witt, 223 N.J. 409, 422 (2015) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)).  To satisfy this exception, the State must also show "the circumstances giving rise to probable cause [are] 'unforeseeable and spontaneous.'"  State v. Smart, 253 N.J. 156, 171 (2023).  That "the particular occupants of the vehicle may have been removed from the car, arrested, or otherwise restricted in their freedom of movement" does not require the police to secure a warrant before searching.  Witt, 223 N.J. at 428 (quoting State v. Alston, 88 N.J. 211, 234 (1981)).

"The scope of a warrantless search . . . is defined by the object of the search and the places where there is probable cause to believe that it may be found."  State v. Esteves, 93 N.J. 498, 508 (1983); see, e.g., State v. Wilson, 478 N.J. Super. 564, 571-72 (App. Div. 2024) (concluding police had probable cause to search a locked glove box based on the odor of marijuana emanating from the passenger compartment "since that was a place within the passenger compartment where marijuana could be concealed"); State v. Hammer, 346 N.J.

Super. 359, 367 (App. Div. 2001) (concluding police had probable cause to search the trunk of the vehicle for weapons after the officer, during a routine traffic stop, "observed . . . hollow point bullets fall from the driver's coat" after he exited the vehicle and the officer's concern for his safety "escalated" upon finding a "zip-lock bag full of a white powder substance"). In other words, "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Terry v. Ohio, 392 U.S. 1, 19 (1968) (quoting Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 310 (1967) (Fortas, J., concurring)).

Here, the court decided the "extent to which the suspects went to avoid capture and their flight from the vehicle after the crash," aided in developing probable cause sufficient to "believe that contraband or further evidence of an offense could be discovered in the BMW." It further determined the nature of the dangerous chase, crash, flight, and discovery of the bag were unforeseeable and not the result of pre-planning. We conclude the record supported both determinations.

The police pursuit arose unexpectedly in the early morning hours when the driver of the BMV evaded police officers who witnessed motor vehicle violations and attempted a traffic stop. What followed was a dangerous high-

17

speed police pursuit for over ten minutes, through two towns, spanning multiple highways, in which the BMW—verified as stolen—wove through traffic, lost a tire, and continued to drive until crashing into a guard rail. When the BMW crashed, three of its five occupants fled armed police on foot, including defendant. Two were stopped by police upon exiting the car. All were dressed in dark and heavy clothing for August, and some, including defendant, wore face coverings.

Significantly, while the BMW was speeding through the eastbound lanes of an eight-lane roadway, police detected a second vehicle speeding parallel to the BMW against the flow of traffic in the westbound lanes. One suspect jumped the divider to the westbound lane and entered the second waiting vehicle that then drove from the scene. Defendant headed in that same direction as police pursued him, and was apprehended by the officers when his escape was thwarted by a barrier along the roadway.

Probable cause existed to believe evidence of an offense would be discovered in the vehicle, and in particular, in the bag on the backseat. The police were aware the car was stolen and they observed the driver eluding police, while other occupants resisted arrest and engaged in obstruction. It was also reasonable to believe the vehicle would contain evidence of an offense. The

A-0494-23

dangerous evasive action taken by the driver of the stolen car and the fleeing occupants certainly made a search for the identity of the suspect still at large a priority, particularly in light of the orchestrated extraction of that individual by another vehicle that successfully raced away from the scene.

We do not question the trial court's recognition that defendant's conduct reflected, at best, a very diminished interest in the bag he left behind when fleeing the wrecked stolen car. Nevertheless, the events and offenses that unfolded spontaneously before the officers amply and independently supported the court's denying suppression of the handgun under the alternative automobile exception.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0494-23